Francis **HAINES**, Plaintiff-Appellant,

v.

Otto **KERNER**, Former Governor, State of Illinois et al., Defendants-Appellees.

No. 72-1972.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 26, 1974.

Decided Jan. 14, 1974.

---

Michael P. Seng, Cairo, Ill., Rodney E. Eyster, Chicago, Ill., for plaintiff-appellant.

William J. Scott, Atty. Gen., Melbourne A. Noel, Jr., Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before CLARK,* Associate Justice, STEVENS, Circuit Judge, and NOLAND,** District Judge.

PER CURIAM.

Plaintiff was placed in solitary confinement for a period of 15 days because he hit a fellow inmate over the head with a shovel. He brought suit against nine prison and state officers for $250,000 in damages, claiming (1) that he did not receive due process in the disciplinary proceedings; and (2) that the conditions of his solitary confinement were cruel and unusual within the meaning of the Eighth Amendment. After we affirmed an order dismissing his complaint, the Supreme Court held that he was entitled to an opportunity to offer proof in support of his allegations. Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652. Trial before a jury resulted in a verdict for the defendants. On this appeal, plaintiff contends (1) that the trial judge should have held as a matter of law that he was denied due process and, in any event, the instructions on the due process issue were erroneous; and (2) that as a matter of law his punishment violated the Eighth Amendment and, in any event, the court erroneously omitted an essential instruction with respect to the Eighth Amend-

ment issue. Other claims of error are also advanced.

The facts relevant to the due process claims are not in dispute and there is only minor disagreement in the testimony concerning the conditions of plaintiff's solitary confinement. The jury's verdict requires us to accept the defendants' version of the evidence to the extent that it is in dispute.

On March 10, 1968, Officer Duncan, a defendant, prepared a handwritten "Keepers Report" on the plaintiff addressed to the Warden and Deputy stating:

"For hitting inmate Doherty #33371 on top of his head with a long handle shovel. Inmate Haines came in with shovel from the outside. He banged the shovel on shower room partition pretty hard. Inmate Doherty said 'Frank, don't bang the shovel.' Haines said, 'O.K. if that's what you want take this,' and he hit Doherty with shovel." Plaintiff's Ex. 2.

At the time of the incident Officer Duncan was on the other side of a shoulder-high partition; according to plaintiff's testimony, "Mr. Duncan came out and took Dougherty back in the bathroom, to the washroom, to wash his head off, wash the blood out of his head. He was bleeding very bad." (Tr. 20–21)

After Duncan's report, which is sometimes described as a "Disciplinary Ticket," had been prepared, plaintiff was requested to appear before Officers Rogers and Lence. Lence was the disciplinary officer on that day. He read Duncan's ticket to the plaintiff and then, according to plaintiff's testimony at the trial:

"They asked me why I did it. I told them I wanted to hit him, I hit him.

"Q Was anything else said?

"A Mr. Lence told me, he said, 'Give us some sort of a reasonable explanation.' He says, 'If you don't give us

---

* The Honorable Tom C. Clark, Associate Justice of the Supreme Court of the United States, Retired, is sitting by designation.

** The Honorable James E. Noland, District Judge for the Southern District of Indiana, is sitting by designation.

no explanation we will have to send you to the limit.' They said, 'Give us some reasonable explanation,' and he would cut the fifteen days down to ten days. I told him, 'No need of that.' I had no reasonable explanation other than I hit him.

"Q Did Mr. Lence thereafter impose a penalty upon you?

"A At that time he imposed it.

"Q What did he impose?

"A Fifteen days." (Tr. 21–22.)[1]

Duncan's disciplinary ticket was reviewed by Senior Captain Sympson who recommended to the warden that plaintiff be demoted to "C" grade. On the following day, a report of the Merit Staff, consisting of four correction officers including Assistant Warden Lence, was approved by the warden. That report contains a statement describing the plaintiff's background, his past disciplinary record, the incident as reported by Officer Duncan,[2] and the recommendation that the plaintiff be demoted from "A" grade to "C" grade.[3] The punishment of 15 days in isolation commenced on October 10, the date of the incident; plaintiff did not participate in the subsequent consideration of the matter by Senior Captain Sympson, the Merit Staff, or the Warden.

Although the place of plaintiff's confinement for 15 days is described as an "isolation cell," he actually shared it with other inmates.[4] The cell was approximately 8 by 16 feet; it contained a small window, a wash basin with only cold water, a toilet, and no bed. Plaintiff was required to sleep on the floor with only two blankets for the first few days,[5] and thereafter with additional blankets. He was not allowed to exercise out of his cell and took only one shower during the 15-day period. He saw a psychiatrist on one occasion, but received no medical attention. His diet consisted of one full meal at noon and two slices of bread in the morning and in the evening.

Heat was supplied by a radiator located in the hall outside the cell itself. Plaintiff testified that it became so cold that he could see his breath, and that his feet, which had been injured in an industrial accident in 1927, pained him as a result of the cold.[6] He testified that soap and towels were not provided. Sympson, a defense witness, testified that soap and towels were available to isolation inmates upon request (Tr. 112); plaintiff admitted that he made no such request (Tr. 41). Sympson also testified that he had visited the cell "usually every day" in 1968 and "never

1. Officer Lence testified as follows:
"Q You read the ticket?
"A I asked him if he had anything to say then and he said no and I said—do you want me to carry on?
"Q Yes, please.
"A I told him normally, because of his age, instead of the fifteen I would give him ten. He said he would do fifteen so I told him—
"Q Mr. Haines told you he could do the fifteen?
"A Yes." (Tr. 71.)

2. The description of the incident as originally reported by Duncan was supplemented by the following comment:
"When Doherty asked 'Frank, why did you hit me' Haines said 'I'll show you some of the old gang spirit is still around here.' While Doherty was washing and cleaning the blood off just before I took him to the hospital, Haines said 'Mr. Duncan, you better write a ticket on me to keep yourself in the

clear.' This is all I saw and know of what happened." Plaintiff's Ex. 4.

3. The demotion resulted in the loss of certain privileges, but not the forfeiture of any "merit time" because plaintiff had no merit time to his credit. He had committed a number of rule infractions in the past.

4. Plaintiff testified that another man shared the cell with him for the first ten days and "the last couple of days I was in there everybody was coming in there and they would put them in wherever they fit when they came in in a group of them." On three or four different occasions, he testified, there were "about five" in the cell at one time.

5. Plaintiff originally testified that he had only two blankets for the first six days, but on cross-examination admitted that the period might have been for only three days.

6. He also testified that he removed his false teeth because they became "smelly."

did see it get too cold in there. It was always warm enough." (Tr. 111–112. See also Tr. 89.) There was no evidence that plaintiff had complained of the cold. There was evidence that the prison doctor visited the isolation cell "frequently." Plaintiff testified that he did not make any complaint to the doctor about his feet (Tr. 54); he had had difficulty with his legs for many years (Tr. 53); there was no evidence that his confinement in isolation aggravated his difficulties or caused him any permanent harm.

## I.

Plaintiff contends that he was entitled to the procedural safeguards set forth in Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484, or at the very least, to the minima identified in Miller v. Twomey, 479 F.2d 701, 715–716 (7th Cir. 1972). Alternatively, he argues that if due process of law was a fact question for the jury, the jury was improperly instructed. We reject these arguments.

■■■■ First, it is significant that the present suit seeks monetary and not injunctive relief. Since good faith is a defense to state officials sued for damages under 42 U.S.C. § 1983, Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L. Ed.2d 288, we believe that in a damage action the conduct of the prison officials should be tested against constitutional doctrine as described in prevailing judicial decisions at the time of their action. See Adams v. Carlson, 488 F.2d 619 p. 629 n. 16 (1973).[7] The law of this circuit upon which prison officials acting

in good faith could reasonably rely in 1968 was set forth in Walker v. Pate, 356 F.2d 502 (7th Cir. 1966); defendants' conduct of the disciplinary proceedings was in accord with the teaching of that case.

Second, it is conceivable that the circumstances of a particular case might be such that if prison officials were to grant a prisoner only the minimal safeguards outlined in judicial decisions, their actions might be so manifestly unjust as to offend "fundamental fairness —the touchstone of due process." Gagnon v. Scarpelli, 411 U.S. 778, 790, 93 S. Ct. 1756, 1763, 36 L.Ed.2d 656. This is not such a case. The record reveals no way in which greater procedural safeguards could have assisted the plaintiff, since he admittedly committed the offense in question, and there is no uncertainty about the underlying facts.

■■■ We believe that, as a matter of law, plaintiff's right to due process of law was not infringed[8], and that the district court would not have erred had it directed a verdict for the defendants. It follows that there can have been no error in the district court's refusal to give the jury plaintiff's proposed instructions on due process.

## II.

■■■ Plaintiff argues that, in the trial judge's instruction to the jury on cruel and unusual punishment,[9] he captured the element of barbarity but not the element of disproportionality, which are contained in the Eighth Amendment's proscription. Since we are of the opinion that the trial judge could prop-

---

7. This conclusion is buttressed by the Supreme Court's determination to apply the specific procedural guarantees outlined in Morrissey v. Brewer prospectively. 408 U.S. at 490, 92 S.Ct. 2593.

8. In his argument concerning plaintiff's proposed Instruction No. 16, plaintiff suggests that due process is violated if an agency, having promulgated rules, fails to observe them. But not every violation of state law by a state agency raises a question under the Due Process Clause of the Fourteenth Amendment. In this case the violations of

prison regulations which plaintiff claims to have occurred do not amount to constitutional deprivations, and plaintiff has not demonstrated any right to relief for such violations as a matter of state law.

9. "A punishment may be cruel and unusual, if under the circumstances, it is of such a character as to shock one's general sense of elemental decency and fundamental fairness. Decency and fairness must be judged in light of contemporary standards as they existed in 1968."

erly have directed a verdict for the defendants on plaintiff's Eighth Amendment claim, we find the omission to have been harmless.

Plaintiff's briefs do not make clear whether he accepts the jury's determination that the punishment was not unduly harsh, in the sense of barbarous, or whether he contends that the court's brief instruction tainted that entire decision. We believe that justice requires us to assume, for purposes of deciding this appeal, that the plaintiff makes the latter claim.

We believe the prohibition against cruel and unusual punishment, like all constitutional guarantees of individual rights, amounts to a standard to govern the conduct of governmental officials and, therefore, raises a question of law. In deciding whether the punishment to which plaintiff was subjected is acceptable under the Eighth Amendment, two factors constrain us. First, we must decide the question in light of the facts of the incarceration as found by the trier of fact. Courtney v. Bishop, 409 F.2d 1185, 1187–1188 (8th Cir. 1969). In the present case, the verdict indicates that the jury resolved the factual dispute about the conditions of solitary confinement against the plaintiff. Second, as in the case of plaintiff's due process claims, we must measure these facts against "the evolving standards of decency that mark the progress of a maturing society," from which the Eighth Amendment draws its meaning, Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (opinion of Warren, C. J.), to the extent they had evolved by 1968. This is especially true because this is a suit for damages. Adams v. Carlson, *supra*. However much the increased willingness of courts to intervene in matters of prison discipline since 1968 may have affected or reflect society's sense of decency to prisoners,[10] we are confident that defendants' conduct in 1968 did not violate the Eighth Amendment. See Ford v. Board of Managers of New Jersey State Prison, 407 F.2d 937 (3rd Cir. 1969).

■ There is no doubt that a punishment can be cruel and unusual if grossly out of proportion to the severity of the crime for which it is imposed. Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793. See also Furman v. Georgia, 408 U.S. 238, 325, 92 S.Ct. 2726, 33 L.Ed.2d 346 (Marshall, J., concurring), 393–394 (Burger, C. J., dissenting). Since solitary confinement has traditionally been an appropriate means of maintaining prison discipline Kostal v. Tinsley, 337 F.2d 845 (10th Cir. 1964), we believe that defendants did not punish the plaintiff excessively by confining him for fifteen days for having engaged in conduct which had a substantial likelihood of causing serious bodily harm.

### III.

The plaintiff also argues that a number of other errors were made in the instructions to the jury and that it was error to exclude plaintiff's Exhibit 9.

In view of our disposition of plaintiff's basic due process and Eighth Amendment claims, we need not discuss his arguments concerning proper instructions for intent and proximate cause. We need only pass upon those instructions which could have affected the jury's resolution of disputed facts concerning the conditions of the cell in which plaintiff was confined.

■ In Kerr v. City of Chicago, 424 F.2d 1134, 1139 (1970), we held that it was error to refuse to give the instruction concerning a civil rights plaintiff's guilt or innocence of a charge in the trial of which his civil rights were allegedly infringed. In the present case, plaintiff's guilt of the violation was unquestioned. Since the questions put to the jury assumed the plaintiff had constitutional rights which might have been violated, notwithstanding his guilt of the violation, the failure to give the

---

10. Compare Walker v. Pate, *supra*, with Miller v. Twomey, *supra*.

instruction could not have confused the jury.

The plaintiff argues that the district court erred in permitting defense counsel to impeach plaintiff by means of his felony conviction more than 30 years ago. We agree with the reasoning of Justice Schaefer that, as a general rule, the prejudicial impact of such evidence is likely to outweigh its probative value. People v. Montgomery, 47 Ill.2d 510, 268 N.E.2d 695 (1971). See United States v. McCarthy, 445 F.2d 587 (7th Cir. 1971). But those cases, unlike the present one, were criminal prosecutions, and the defendants, against whom the evidence was introduced, were not at the time imprisoned. Since the jury knew that plaintiff had been a prisoner for many years, our "conviction is sure that the error did not influence the jury, or had but very slight effect" upon it, Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557. We therefore hold that the error was harmless.

Finally, plaintiff claims that it was error to exclude his Exhibit 9, which was a list of prisoners from Menard who had been turned over to the State's Attorney for criminal prosecution. It was offered to prove that there was a possibility that plaintiff might have been prosecuted for his assault and, therefore, he should have been given *Miranda* warnings. The court properly rejected the exhibit as collateral to the issues in this case. Even if any statement that plaintiff made would be inadmissible in a criminal prosecution because of the omission of *Miranda* warnings, that consequence has no relevance to the issues tried in this case.

Based on our review of the entire record, the briefs and the arguments of counsel, we are satisfied that the trial judge gave the plaintiff a fair opportunity to offer proof in support of his allegations and that he failed to prove that he is entitled to recover damages from the defendants.

The judgment is

Affirmed.