Cleveland **KIMBROUGH**,
Plaintiff-Appellant,

v.

Dave **O'NEIL**, Individually and in his
official capacity as Sheriff of St. Clair
County, Illinois, et al., Defendants-Appellees.

No. 74–1870.

United States Court of Appeals,
Seventh Circuit.

Submitted June 18, 1975.

Decided Aug. 14, 1975.

Rehearing En Banc
Ordered Sept. 26, 1975.

Cleveland Kimbrough, for plaintiff-appellant.

Robert H. Rice, State's Atty., Robert L. Craig, Asst. State's Atty., Belleville, Ill., for defendants-appellees.

Before SWYGERT, CUMMINGS and STEVENS, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff, a prisoner at the United States prison at Atlanta, Georgia, brought this civil rights action for declaratory relief and compensatory and punitive damages against the Sheriff of St. Clair County, Illinois, and two of his deputies. Plaintiff alleges that his cause of action arises under 42 U.S.C. §§ 1982, 1983, 1985, 1986 and 1988, and that jurisdiction is based on 28 U.S.C. §§ 1331 and 1343.

Plaintiff alleges that while awaiting trial on federal charges, he was committed to the custody of the county jail from March 9 to April 14, 1972. Upon entering the jail, defendant Johnson took a ring and watch from the plaintiff and issued a receipt therefor. Upon the plaintiff's release to federal custody, the ring, which plaintiff claims was a diamond ring valued at approximately $2,500, was not returned to him. A note indicating failure to return the ring was signed by defendant Johnson. Plaintiff states that twelve letters from him requesting the Sheriff's office to return his ring were unanswered.

Plaintiff further alleges that on March 25, 1972, he was summarily placed in a solitary confinement cell where he remained for three days. Plaintiff alleges that the cell had "no toilet; no water for drinking or washing; and no mattress, bedding, or blankets." He further claims that for that period of time he was "forced to eliminate on the floor, and water was brought at the whim of the guard, which was infrequent." He states that he was denied "rudimentary implements of personal hygiene such as toilet paper, soap, washing water and towels"; and that "[t]hroughout the nights the Plaintiff was subjected to water being thrown upon him by unknown guards after requesting drinking water, and did eventually cause Plaintiff to suffer a severe cold and fever and denial of any semblance of medical treatment." He alleges that during this period of confinement he was denied the right to communicate with his attorney, family and friends by mail or visits.

It is alleged that the defendants "acted deliberately, maliciously and with the motive and intent of punishing Plaintiff because of his Race, social, political, religious and moral views." Plaintiff claims violation of his constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.

Defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted. The district court granted the motion to dismiss on March 26, 1974. In its order the

court said that while the conditions in solitary confinement "may have been restrictive," they were not cognizable under the Civil Rights Act because they lasted only three days. It also held that while the loss of the ring might be considered a deprivation of property without due process, the Fourteenth Amendment was not designed to cover the loss involved in this case. In a brief order on April 29, 1974, the court reaffirmed its earlier holding and denied a motion by the plaintiff to vacate. Plaintiff appeals from this order. Upon the record and briefs, and without oral argument, we reverse and remand for further proceedings. Rule 2, Fed.R.App.P.

■■■ The plaintiff's allegations of the conditions of his confinement state a claim for relief under 42 U.S.C. § 1983 for an unconstitutional imposition of cruel and unusual punishment. The conditions alleged are "so foul, so inhuman and so violative of basic concepts of decency," *Adams v. Pate*, 445 F.2d 105, 109 (7th Cir. 1971), that their existence, even for a period of three days, could constitute a violation of the Eighth Amendment. *LaReau v. MacDougall*, 473 F.2d 974 (2d Cir. 1972), *cert. denied*, 414 U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973). Plaintiff also alleged that he was placed in solitary confinement "after demanding use of telephone to contact attorney concerning an emergency situation." Such allegations would permit the plaintiff to attempt to prove that his confinement violated the Eighth Amendment for another reason, for being grossly out of proportion to the conduct for which punishment was imposed. *Haines v. Kerner*, 492 F.2d 937, 942 (7th Cir. 1974).

■■■ Plaintiff's allegation that the ring which was taken from him by defendants was not returned to him upon his release from their custody is sufficient to state a cause of action under 42 U.S.C. § 1983. *Carroll v. Sielaff*, 514

F.2d 415 (7th Cir. 1975). These facts would also state a claim for relief for tortious conversion under Illinois law. Should plaintiff wish to pursue this theory of recovery, we would consider it an abuse of discretion for the district court to decline to exercise pendent jurisdiction over the state claim.*

The order appealed from is reversed and the case remanded for further proceedings.

Reversed and remanded.

SWYGERT, Circuit Judge (concurring).

While I agree with the result we reach in this case, I do not believe we can avoid some discussion of this court's recent decision in *Bonner v. Coughlin*, 517 F.2d 1311 (7th Cir., 1975). In *Bonner* we dealt with the sufficiency of a complaint brought under section 1983 which alleged in part that prison guards who had entered the plaintiff's cell to conduct a routine prison search had upon completing the search left the cell door open, allowing other persons to enter plaintiff's cell and remove his property. Though one of the questions briefed and argued in that case was whether "mere negligence may support a recovery under section 1983," our court did not answer this question, but focused instead on the content of the Fourteenth Amendment right not to be deprived of property by the state without due process. Our Court held in *Bonner* that in claims arising out of the "misconduct" of state officers resulting in property deprivation or damage, due process is satisfied if state law provides an adequate tort remedy by which the person whose property is taken or damaged can be made whole for his loss. Noting that Illinois has abolished sovereign immunity in "claims against the State for damages in cases sounding in tort," Ill.Rev.Stat.1973, ch. 37, § 439.8(d), and noting further that

---

* Since the claim as to the ring is pendent to the Section 1983 action with respect to the ring, we need not consider whether it is also pendent to the Eighth Amendment action.

the individual defendants did not appear to possess any state immunity which would bar suit against them in a state court, *Bonner* at n. 23, the court concluded that the plaintiff in *Bonner* had failed to allege the breach of any duty derived from the Fourteenth Amendment, and that the availability of the state tort

remedies, satisfied the requirements of due process.[1]

Unless limited in some way, the foregoing rationale might apply as well to the present facts.[2] This is an Illinois case, and Kimbrough would appear to have the same remedies at his disposal as did Bonner.[3] Here, however, the

---

1. Thus, in my view, neither *Bonner* nor this case deals with "the outer limits of § 1983 litigation," but rather with the meaning and content of the Fourteenth Amendment's protection against state deprivation of property without due process. In this regard, I must note that while I can agree with Judge Stevens' identification of "deprivation," "state action," and "due process" as elements of any claim under the Fourteenth Amendment's Due Process Clause, I cannot agree with several suggested limitations of these concepts which appear to be advanced in his separate concurrence in this case. First, I certainly cannot agree that this case requires significant analysis to determine whether a deprivation has occurred within the meaning of the Fourteenth Amendment and section 1983. The alleged value of the ring is $2,500.00, so it cannot be contended that this is a *de minimis* situation simply in terms of the value of the item involved *see Goss v. Lopez*, 419 U.S. 565, 575–76, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); nor is the character of the property relevant, since the Due Process Clause does not distinguish between different kinds of property. *Fuentes v. Shevin*, 407 U.S. 67, 88–90, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *North Georgia Finishing Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 608, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Finally, the deprivation in this case is alleged to have been intentional, so that any construction of section 1983 which includes as a purpose therefore the remedying and prevention of misuse of state authority would certainly cover this official misconduct within its definition of the term "deprivation."

   On the issue of state involvement, I believe the law to be equally clear. With regard to the Fourteenth Amendment itself, it has been established since the decision of the Supreme Court in *Ex Parte Virginia*, 100 U.S. 339, 25 L.Ed. 676 (1879) that

   "[w]hoever, by virtue of a public position under a State government, deprives another of property, life, or liberty without due process of law . . . violates the constitutional inhibition, and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State. This must be so, or the constitutional prohi-

   bition has no meaning. Then the State has clothed one of its agents with power to annul or evade it." *Id.* at 347.

   Similarly, liability under section 1983 cannot properly be conditioned on express state authorization, as for example, by statute. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941); *Monroe v. Pape*, 365 U.S. 167, 183–87, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Here again, the fact that the alleged deprivation was intentional precludes the argument that the facts in this case fall outside the scope of the "under color of" requirement of section 1983, or the state action requirement of the Fourteenth Amendment.

   We are plainly left, I believe, with the single question of whether a state deprivation of property based on one's "race, social, political, religious and moral views" (complaint, p. 4) is violative of the Due Process Clause of the Fourteenth Amendment.

2. So construed, *Bonner* would be in apparent conflict with our recent opinion in *Carroll v. Sielaff*, 514 F.2d 415 (7th Cir. 1975), which despite its inclusion in footnote 17 in *Bonner*, was never previously characterized as a Fourth Amendment case and was in fact briefed and argued in Fourteenth Amendment terms.

3. I cannot agree that this case should turn on the adequateness of the remedy Kimbrough might have available in the courts of Illinois, should he elect to sue there for the return of his ring or for damages. "[N]o later hearing and no damage award can undo the fact that the arbitrary taking . . . has already occurred. '[The Supreme Court] has not . . . embraced the general proposition that a wrong may be done if it can be undone.' *Stanley v. Illinois*, 405 U.S. 645, 647 [92 S.Ct. 1208, 31 L.Ed.2d 551]." *Fuentes v. Shevin*, 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972). The wrong in this case was the initial deprivation; the state of Illinois cannot immunize its agent from liability under section 1983 by

pleadings would support proof of a willful and arbitrary taking of plaintiff's ring by a state officer. This, it seems to me, is a critical distinction. A state officer who in the course of his duties purposefully appropriates the property of another to the state or to himself may violate that other person's right to due process in two ways: first, he may violate the person's right to procedural due process by failing to provide for a prior or reasonably contemporaneous hearing; second, he may violate the person's right to substantive due process by affirmatively invoking the power of the state in a completely arbitrary[4] manner and without lawful justification in order to effect the actual deprivation.[5]

In *Bonner*, this court was concerned with the requirements of procedural due process in the context of a simple negligent act[6] by a state officer resulting in loss of property. In footnote 24 of that opinion we noted that a prior hearing in the case of a negligent act would be impossible since neither the state nor its agent could anticipate such an act. I agree with this proposition as a logical matter.[7] Where willful acts are involved, however, I do not think such an analysis is sufficient. A state officer who uses his office and the power of the state to lawlessly confiscate, damage, or destroy the property of another deprives that person of due process regardless of any consideration concerning hearings.

adopting for itself an attitude of "if you don't like it, sue." It must be kept in mind that the defendant in this case is not the state, but the individual agent[s]. Regardless of the status of state immunity doctrine in Illinois, the misuse of state power alleged is a completed act, and the only act upon which liability is predicated in this case.

4. I use the term "arbitrary" in its commonly accepted sense, which, according to Webster and to Black, denotes a conscious choice of alternative actions. Webster's Third New International Dictionary (1961); Black's Law Dictionary (1951). So construed, the term does not comprehend simply negligent actions.

5. In *Jeffries v. Turkey Run Consolidated School District*, 492 F.2d 1 (7th Cir. 1974), this court dismissed a section 1983 complaint based on an alleged denial of substantive due process for failure to allege a sufficient property or liberty interest under the Fourteenth Amendment. In doing so, the court briefly touched on the nature of substantive due process:

The claim that a person is entitled to "substantive due process" means, as we understand the concept, that state action which deprives him of life, liberty, or property must have a rational basis—that is to say, the reason for the deprivation may not be so inadequate that the judiciary will characterize it as "arbitrary." Since standards of "irrationality" or "arbitrariness" vary from time to time and from judge to judge, applications of the concept—indeed, the concept itself—have generated serious criticism of the judiciary and the judicial function. In this case we need not appraise the viability of the concept . . . . *Id.* at 3–4 (footnotes omitted).

I recognize the validity of much of the criticism directed at the unrestrained use of the rubric of due process to invalidate state laws deemed to represent "unwise" or "bad" policy in the eyes of a particular judge. Yet I cannot avoid the conviction that however much "standards of 'irrationality' or 'arbitrariness' vary from time to time and from judge to judge," none would disagree with the proposition that *some* justification of some kind is required to legitimize state interference with the ownership and enjoyment of property, and that considerations of race, or an individual's views on social, political, religious, or moral subjects, or indeed, the individual desire of a state agent to take for himself the property of another—which amounts to no justification at all—, cannot pass muster as constitutional predicates for such interference. I believe a fundamental purpose of the Due Process Clause is to prevent such arbitrary state action whenever life, liberty, or property may be thereby adversely affected.

6. I specifically note my understanding that *Bonner* did not involve allegations of gross negligence or reckless misconduct. *Compare* my dissent in *Gutierrez v. Dep't of Public Safety*, 479 F.2d 701, 724–25 (7th Cir. 1973), *with* Judge Fairchild's concurrence in *Bonner*.

7. I do not express any view here in the question of whether simple negligence or even a non-negligent failure to act may provide state action cognizable under the Fourteenth Amendment or section 1983. *Compare* Judge Fairchild's concurrence in *Bonner with* this court's opinion in *Byrd v. Brishke*, 466 F.2d 6, 10 (7th Cir. 1972), and the opinion of the Fifth Circuit in *Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1969).

The very concept of procedural due process presupposes that the substantive decision-making will be based on some lawful rule or system of rules such as prison regulations, the provisions of a public employment contract, the specific proscriptions contained in a valid obscenity ordinance, or common law limitations of the police power. The purpose of the hearing is to assure that the legal rules will be applied to a full record of relevant facts. If the legal rules are themselves discarded in favor of the arbitrary desires of the decision-maker (in this case perhaps the desire of a prison official to appropriate the diamond ring to his own personal use) then procedural niceties become irrelevant.[8] Put another way, if, under all the circumstances, the state could not possibly justify the action taken by its agent, the action violates due process and the agent is liable under section 1983, regardless of the procedures used in reaching the unlawful result.

I interpret the opinion in this case to hold that Kimbrough has adequately stated a cause of action under section 1983[9] based on deprivation of his property without due process.[10] If my interpretation is a correct one, our decision today and our recent decision in *Bonner* can only be reconciled if *Bonner* is limited to cases involving simple negligence. Since I am unable to conclude that *Bonner* is so limited on its face, I note my own view that it has been restricted to cases involving simple negligence by today's decision.

STEVENS, Circuit Judge (concurring).

The Eighth Amendment claim requires reversal. The property claim is plainly sufficient as a matter of Illinois law. Since it arises out of the same transac-

---

**8.** It is clear that in this case Kimbrough does not seek a hearing, but rather the return of his ring. The state does not maintain that any rule or other legal justification would support the retention of the ring, so a hearing, even if offered, would serve no purpose. *Cf. Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

**9.** I cannot agree that this case may properly be resolved by remanding to the district court Kimbrough's Eighth Amendment claim and by directing him to pursue a state remedy in connection with his ring on a theory of pendent jurisdiction as Judge Stevens suggests. First, I believe that there is no basis for the exercise of pendent jurisdiction over the state property claim unless a federal claim based on the taking of the ring is established. The analysis of pendent jurisdiction in *United Mineworkers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) indicates that pendent jurisdiction must find its basis in a "common nucleus of operative fact" *id* at 725, 86 S.Ct. 1130, so that the federal and state claims can be considered as presenting "but one constitutional 'case.'" I simply do not see such a relationship between a claim under the Eighth Amendment relating to the conditions of a three-day term of solitary confinement, and a state cause of action based on the unlawful conversion of a diamond ring. Proof of the federal claim will do virtually nothing toward establishing the state claim, which has an entirely separate factual basis. More importantly, I do not believe

it to be within the proper function of this court to refuse to adjudicate the question presented by Kimbrough's complaint, that is, whether the deprivation of his ring presents a cause of action under section 1983. We do not know but that Kimbrough has chosen the federal remedy because punitive damages would be awardable on a showing of a willful and bad faith misuse of state authority as is alleged. *Donahue v. Staunton*, 471 F.2d 475, 482 (7th Cir. 1972), *cert. denied*, 410 U.S. 955, 93 S.Ct. 1419, 35 L.Ed.2d 687 (1972). At any rate, it seems to me that the choice of theories is his to make. Our function is not to avoid his question by imposing another cause of action in this case, but to decide whether the complaint states a cause of action in the first instance.

**10.** Unlike the Fourth Amendment situation presented in *Bonner*, where it was alternatively alleged that the prison guards had unreasonably seized Bonner's trial transcript during a routine search of his cell, this case does not involve an allegation that the seizure of Kimbrough's ring was unreasonable. The objection here is to the continued deprivation after Kimbrough was released from the state prison into federal custody. This, it seems to me, is most clearly a due process problem, and for this reason I do not undertake to determine whether such continued retention after a concededly lawful seizure might also be characterized as a "new" seizure, calling into play Fourth Amendment protections.

tion as the Eighth Amendment claim, there is no reason to question the jurisdiction of the District Court to decide it. Our interest in efficient judicial administration, as well as petitioner's interest in having his right to compensation for the loss of his ring adjudicated in a simple straightforward manner, both dictate that his property claim be tried in the same proceeding as his claim based on the conditions of his confinement. At our conference I therefore voted in favor of a simple order remanding the matter for a prompt trial.

However, in view of the decision to rely on 42 U.S.C. § 1983 as the basis for holding that the property claim is sufficient, and in view of the novel interpretation of that section advanced in Judge Swygert's concurring opinion, it seems appropriate to add some comment about this developing area of federal constitutional tort law.

There are myriad situations in which the acts of State agents cause harm to private citizens. Arguably every such harm is a deprivation of either liberty or property, and every such act is the responsibility of the agent's principal; therefore, again arguably, in every such situation the Fourteenth Amendment is violated unless the citizen is accorded "due process of law." And, of course, every person subjected to a violation of the Fourteenth Amendment is entitled to redress in a federal court under the Civil Rights Act, 42 U.S.C. § 1983.[1]

The outer limits of the area of § 1983 litigation are yet to be defined. In our search for those boundaries Judge Swygert suggests that we may find helpful guidance in the concept of "substantive due process." As applied to this case, that concept may have two different meanings. It may refer to a deprivation of the plaintiff's property motivated by the defendants' hostility to the plaintiff's "race, social, political, religious and moral views";[2] alternatively, it may merely refer to any deprivation by an agent of the State which the State is unable to justify.[3]

There is a vast difference between these two interpretations of the concept. Most obvious is the difference in the burden of proof imposed on a plaintiff who is merely seeking the return of his ring or compensation for its loss. Under the impermissible motivation theory, he has the burden of proving not only that the defendants committed the wrong intentionally, but, in addition, that they did so for the reasons alleged in the complaint; mere proof that the ring was not returned would not discharge that burden. On the other hand, under the "absence of any legitimate justification" theory, I would suppose that liability should attach whether the loss of the ring was the consequence of negligence, gross negligence, or a deliberate theft by a guard or even by another prisoner. Under the second substantive due process approach, therefore, plaintiff need merely prove that he surrendered his ring to defendants and it has not been returned; logically the burden of justification should then rest on the State even if plaintiff did not prove an intentional taking.

In legal theory there is also an important difference between the two interpretations of substantive due process.

---

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. See n. 1 of Judge Swygert's concurring opinion quoting from p. 1060 of Kimbrough's complaint.

3. As Judge Swygert explains this version of the concept, "[I]f, under all the circumstances, the state could not possibly justify the action taken by its agent, the action violates due process and the agent is liable under § 1983 . . . ." See concurring opinion, *supra*, at p. 1062.

Under the former approach, the Due Process Clause is merely the medium through which other constitutional protections are made applicable to the States. For it is familiar doctrine that a State cannot discriminate among its citizens on the basis of their race or, for example, their exercise of rights protected by the First Amendment.[4] Under that approach, the standards for implementing the concept of substantive due process are found elsewhere in the Constitution, and not merely in the Fourteenth Amendment itself. But under the alternative view of substantive due process—that the clause is violated whenever a State's conduct is not justified—judicial fiat inevitably provides the measure of acceptable or unacceptable state action. It is this latter version of substantive due process that has from time to time generated criticism that the federal judiciary is wont to arrogate to itself powers not granted by statute or by the federal Constitution.

Before we try to take direction from such an inscrutable signpost as "substantive due process," I believe our analysis of novel § 1983 claims should focus on the precise constitutional duty which has allegedly been breached. With respect to the property claim in this case, at least three different constitutional violations may be involved. The theory of the complaint, which presumably Judge Cummings' opinion accepts, is that the retention of the ring in response to an expression of plaintiff's political or religious views, or as an act of racial discrimination, violated the First and Thirteenth Amendments and the equal protection clause of the Fourteenth Amendment. I have no doubt about the validity of that theory.[5] Alternatively, the deliberate theft of the ring might be considered an unauthorized seizure violative of Kimbrough's Fourth Amendment rights, cf., Bonner v. Coughlin, 517 F.2d 1311 (7th Cir. 1975). Finally, apart from any other provision of the Constitution, there may have been a violation of the Due Process Clause of the Fourteenth Amendment. Judge Swygert concludes that such a violation has been alleged.

Although I by no means suggest that the Due Process Clause may be understood by simply reading it, it is nevertheless appropriate to consider its text.[6] The language of the clause identifies three limitations on its coverage. First, the harm suffered by the plaintiff must be a deprivation of life, liberty or property; second, the deprivation must be effected by the State; and third, it must have occurred "without due process of law."

When a deprivation of liberty is claimed, the Supreme Court has required a showing of "grievous loss" as a predicate for holding that the claimant was entitled to due process of law. Parallel reasoning might lead to the conclusion that a harm to property is not a deprivation actionable under § 1983 unless it is sufficiently grievous to satisfy some minimum standard.[7] The majority of the

4. See, e. g., Illinois State Employees Union v. Lewis, 473 F.2d 561 (7th Cir. 1972), and cases reviewed at 570–572.

5. In Lynch v. Household Finance Corp., 405 U.S. 538, 544, 92 S.Ct. 1113, 1118, 31 L.Ed.2d 424, the Court quoted the following from Shelley v. Kraemer, 334 U.S. 1, 10, 68 S.Ct. 836, 92 L.Ed. 1161:

"It cannot be doubted that among the civil rights intended to be protected from discriminatory state action by the Fourteenth Amendment are the rights to acquire, enjoy, own and dispose of property. Equality in the enjoyment of property rights was regarded by the framers of that Amendment as an essential precondition to the realization of other basic civil rights and liberties which the Amendment was intended to guarantee."

6. The Fourteenth Amendment provides, in part:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law; * * *."

7. In Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725, the Supreme Court stated at 576, 95 S.Ct. at 737:

panel in *Bonner*, as have other courts, assumed that any deprivation of property, no matter how trivial, would satisfy this element of the cause of action. That assumption may of course, prove to be incorrect, but the point I wish to emphasize is that the "deprivation" element of the § 1983 claim involves a consideration of the nature and the extent of the harm to the plaintiff; neither the identity nor the motivation of the perpetrator of the harm, nor the character of his misconduct, is relevant to the question whether a deprivation of liberty or property occurred.[8]

The focus shifts when we ask whether there is sufficient state involvement to justify § 1983 liability. That question is easily answered when, as in *Lynch v. Household Finance Corp.*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424, the harmful conduct is expressly authorized by the State. It is more difficult when the agent's action is not so authorized, but his office has placed him in a position to cause a harm which a private citizen might not have an opportunity to perpetrate. Thus, in *Bonner*, the majority of the panel had no doubt that the prison guards who ransacked the cell were acting under color of state law within the meaning of § 1983. This conclusion would seem equally valid regardless of whether the guards negligently damaged

Bonner's property or deliberately appropriated it.[9] Their private motivation would hardly seem controlling on the state action issue.[10]

If we assume a deprivation of property by the State, or by persons acting under color of state law, we must then decide whether the deprivation was "without due process of law." It is elementary, of course, that the phrase mandates greater safeguards in some situations than in others; generally speaking, the more grievous the loss, the more elaborate the appropriate procedure must be. Deprivations of liberty may require greater procedural safeguards than deprivations of property. Thus, for example, the rule that an adequate hearing must precede the deprivation is subject to various exceptions when only property interests are at stake.[11] The Supreme Court has repeatedly held in property cases that the demands of due process may be satisfied by an appropriate hearing and award of compensation after the initial deprivation has taken place. In property cases, the timing of the hearing is merely one factor affecting the fairness of the State's remedial process.

In the present case, the original taking of Kimbrough's ring was unquestionably authorized by the State. At that time I suppose the State assumed a constitu-

---

"that as long as a property deprivation is not *de minimis*, its gravity is irrelevant to the question whether account must be taken of the Due Process Clause. *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 342 [89 S.Ct. 1820, 23 L.Ed.2d 349] (1969) (Harlan, J., concurring); *Boddie v. Connecticut*, 401 U.S. 371, 378–379 [91 S.Ct. 780, 28 L.Ed.2d 113] (1971); *Board of Regents v. Roth, supra*, [408 U.S. 564] at 570 n. 8 [92 S.Ct. 2701, 33 L.Ed.2d 548]. A 10-day suspension from school is not *de minimis* in our view and may not be imposed in complete disregard of the Due Process Clause."

At the cited pages in *Boddie v. Connecticut*, the Court discussed the necessity for a hearing before an individual is deprived of "any significant property interest." 401 U.S. at 378–379, 91 S.Ct. 780. Of course, the fact that "account must be taken of the Due Process Clause," even though the amount involved is

trivial, does not foreclose the possibility that the due process requirement would be satisfied by providing compensation *after the event* rather than a hearing in advance of the taking.

8. But see Chief Judge Fairchild's concurrence in *Bonner, supra*, at 1321.

9. In *Bonner, supra*, Chief Judge Fairchild did not accept this proposition.

10. If the agent's motivation should be controlling, it would seem more reasonable to find a sufficient state involvement in the negligent performance of an assigned task than in the deliberate theft of property in contravention of state regulations.

11. *See* cases cited in *Bonner*, p. 1319 n. 25.

tional duty either to return the ring at the time of Kimbrough's release or, if unable to do so, to compensate him for its loss. If we assume that no state procedure is available by which Kimbrough may obtain such compensation, regardless of how the loss may have occurred, I would readily conclude that the deprivation of property expressly authorized by the State of Illinois was without due process of law. On the other hand, if the State has provided an appropriate procedure—that is to say, "due process" —for compensating the plaintiff for his loss, I should think the deprivation authorized by the State was surely constitutional.

Kimbrough's complaint, however, does not question the original taking of his ring. He challenges the unauthorized acts of the agents who may have stolen or lost, or permitted someone else to steal or to lose, his ring. Since the conduct of those agents was unauthorized, they surely did not contemplate offering plaintiff any procedural safeguards in advance of the taking or any remedial process for compensating him after the taking occurred. The State, however, does provide a remedy against the culpable agents. If we assume the adequacy of that remedy, there is no more reason to conclude that the deprivation resulting from the guard's unauthorized conduct was "without due process of law" than that due process was lacking at the time of the original, authorized taking of the ring. In sum, if we put the allegations of discrimination to one side and focus only on the plaintiff's due process claim, I would conclude that the deprivation of plaintiff's property by the unauthorized acts of the prison guards, although attributable to the State because the guards were acting under color of state law, was not action taken by the State "without due process of law."

This conclusion is not foreclosed by *Lynch v. Household Finance Corp.*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424, which held that 28 U.S.C. § 1343(3) provides federal jurisdiction of claims to vindicate property rights as well as personal rights. Just as the jurisdictional statute authorizes an action under 42 U.S.C. § 1983 to determine whether Connecticut's garnishment procedure provides due process to the person whose property is taken, so does it equally authorize an action to determine whether Illinois provides due process to persons, like Kimbrough, whose property may be lost or stolen while in state custody. But a holding that there is federal jurisdiction to entertain claims asserting a deprivation of property without due process of law teaches us nothing with respect to the sufficiency of any such claim.

In a variety of situations the Supreme Court has found that the Due Process Clause did not require that a hearing be held in advance of any deprivation of property. In such cases the Court has made a practical evaluation of the particular interests involved and concluded that the Constitution merely required that property not be taken without a meaningful hearing at an appropriate time.

*Bonner* holds that in cases involving negligent harm to property the federal interest in fair procedure is vindicated by an adequate state process to redress the wrong. Apart from violations of other constitutional safeguards such as the Fourth Amendment, I would strike the same balance in cases involving intentional trespasses against property interests. The mere fact that the plaintiff is the victim of a tort committed by a state official rather than a private party does not, in my judgment, provide an adequate basis for affording him a federal remedy. The federal interest in conserving federal judicial resources for litigation in which significant federal questions are at stake favors a construction of the Civil Rights Act which will not enlarge it to provide an alternative means of processing ordinary common law tort claims.[12]

12. There is, of course, a critical difference between using the federal judiciary to make sure that Illinois affords its prisoners an acceptable procedure for processing their property claims,

It is nevertheless possible to conclude that the federal interest in preventing deliberate misconduct by prison guards is greater than the federal interest in affording a remedy in negligence cases, and therefore to accept the holding in *Carroll v. Sielaff*, 514 F.2d 415, 417 (7th Cir. 1975), though explicable on Fourth Amendment grounds, as resting on the Fourteenth Amendment. Even so construed, however, that case does not embrace the concept of substantive due process; nor does it announce a rule that every intentional harm to property by a state agent is a violation of § 1983.

Because this area of the law has yet to develop, I think we must be cautious about extrapolating broad general rules from particular holdings. It is significant that despite the divergent analyses reflected in Judge Swygert's concurring opinion in this case, Chief Judge Fairchild's concurrence in *Bonner*, and the majority opinion in *Bonner*, we all agree that harms to property resulting from the mere negligence of state employees are not actionable under § 1983. Future cases will require us to define the standard of care for state agents in a variety of situations. I doubt that we will adopt a rule as simple as one which never imposes liability for mere negligence and always sustains an allegation of gross negligence, for example. On the contrary, I firmly believe that standards of care will be defined differently for different constitutional duties.[13]

on the one hand, and using the federal courts to do the processing themselves.

**13.** *Compare*, for example, *Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1968), with *Gutierrez v.*

*Department of Public Safety*, 479 F.2d 701, 719–721 (7th Cir. 1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102.