John BROWN, et al., Plaintiffs,

v.

Steve BRIENEN, et al., Defendants.

No. 80–3277.

United States District Court, C.D. Illinois, Springfield Division.

Nov. 10, 1982.

John A. Beyer, Satter, Ewing & Beyer, Pontiac, for plaintiffs.

William A. Allison, Bane, Allison & Saint, P.C., Bloomington, for defendants.

## ORDER

J. WALDO ACKERMAN, Chief Judge.

### I.

On July 12, 1977, the McLean County Board adopted a personnel policy. The personnel policy, under a section titled Compensatory Time Off, states:

> Employees who work more than thirty-seven and one-half hours in a given work week or work on a county holiday may be granted time off in an amount equal to the overtime worked.

Plaintiffs' ex. C. John King was sheriff when the County Board passed this policy. The sheriff's informal records indicate that deputies were not taking their accumulated compensatory time.

In December of 1978, Defendant Brienen became Sheriff of McLean County. He adopted a more formal policy to provide for compensatory time off. He instructed the deputies to keep records of their overtime, and placed restrictions on when the deputies could take compensatory time off. Defendant Brienen established minimum staffing levels for the sheriff's department. Because of the minimum staffing levels and the County Board's unwillingness to fund additional staffing, the sheriff was unable to give all the accumulated compensatory time. Thus, Plaintiffs accumulated large amounts of compensatory time.

Plaintiffs filed a complaint under 42 U.S.C. §§ 1983, 1985, 1986, alleging a deprivation of property without due process of law and a denial of equal protection of laws. Plaintiffs sought monetary damages, injunctive relief, and attorney fees. This Court, in the first part of a bifurcated trial, held for Plaintiffs on the issue of liability.

Later, on July 2, 1982, relying on *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), this Court vacated its order holding Defendants liable. This holding was not based on a changed view that Plaintiffs had not been deprived of a property right, *i.e.* their compensatory time off, but rather, since the state provides an adequate remedy to Plaintiffs to recover whatever compensatory time off is due them, there has not been a deprivation without due process. Plaintiffs, pursuant to Fed.R. Civ.P. 59, have filed a motion for modification of judgment. They contend that this Court's reliance on *Parratt* was incorrect. Defendants have filed a brief in opposition to this motion.

Because the Court believes the State of Illinois provides sufficient process to Plaintiffs, it denies the motion for modification of judgment.

### II.

This motion presents a question concerning the construction of 42 U.S.C. § 1983, and the due process clause of the Fourteenth Amendment. The Fourteenth Amendment provides, in part:

> [N]or shall any state deprive any person of life, liberty, or property, without due process of law. . . .

The dispute in this motion revolves around the question of what constitutes due process of law. The construction of this simple sounding phrase is not free from difficulty or dispute. *See, e.g., Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The legislative history of 42 U.S.C. § 1983 has been labeled inconclusive, *id.* at 193, 81 S.Ct. at 487 (Harlan, J., concurring), and the courts' interpretations are somewhat

contradictory.[1]  *Compare Monroe v. Pape, supra, with Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

Plaintiffs assert that the government has deprived them of a property interest.  This property interest, however, is in the nature of a contract whether the contract be express or implied.  Therefore, the substantive injury in this case was a breach of contract.  If the breach had been committed by someone other than a governmental entity, the facts would not raise a constitutional question.  Since the County has breached the contract, Plaintiffs assert they were denied due process of law.  Plaintiffs could have filed their breach of contract action in an Illinois Circuit Court and sought appropriate relief.  Thus, the focus must be on the due process required where an agency of government has breached a contract.

It is important to note exactly what comprises due process.  As the court in *Ingraham v. Wright* explained:

> Due process, unlike some legal rules, is not a technical conception with a fixed context unrelated to time, place and circumstances. . . .  Representing a profound attitude of fairness . . . 'due process' is compounded of history, reason, the past course of decisions, and stout confidence in the strength of the democratic faith which we profess. . . .

430 U.S. 651, 675, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977) (quoting *Anti-Fascist Comm. v. McGrath,* 341 U.S. 123, 162–63, 71 S.Ct. 624, 643–44, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)).  Rather than looking to one technical rule, an analysis of due process should look to a number of different factors.  The factors usually examined are: one, the private interest that will be affected; second, the risk of an erroneous deprivation, and the likely value of additional or substitute safeguards; and, three, the state interest involved.  *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).  An examination of the state interest should include the functions involved, and the fiscal and administrative burdens entailed by the different procedural safeguards.  The courts have consistently noted that at some point the societal value of additional procedures is outweighed by the cost.  *Id.* at 348, 96 S.Ct. at 909.

Here, as previously stated, in my opinion Plaintiffs have been deprived of a property interest.  Generally, due process requires greater procedures when liberty interests are implicated as opposed to property interests.  *Arnett v. Kennedy,* 416 U.S. 134, 178–79 n. 6, 94 S.Ct. 1633, 1656 n. 6, 40 L.Ed.2d 15 (1974) (White, J., concurring and dissenting); *Kimbrough v. O'Neil,* 523 F.2d 1057, 1065 (7th Cir.1975) (Stevens, J., concurring).  In fact, "where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate."  *Parratt v. Taylor, supra,* 451 U.S. at 540, 101 S.Ct. at 1915 (quoting *Mitchell v. W.T.*

---

1.  *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1967), was an occasion for one of the Court's more expansive statements concerning the scope of § 1983.  The Court was not concerned that a state law would give the plaintiffs the relief they sought.  Justice Douglas, writing for the majority, believed that the federal law was supplementary to the state remedy, and the plaintiffs did not have to seek enforcement of the state law before invoking the federal law.  *Id.* at 183, 81 S.Ct. at 482.  Justice Frankfurter wrote a strong dissent stating that Congress, in approving § 1983, had no intention of taking over the entire field of ordinary state torts.  *Id.* at 193, 81 S.Ct. at 487.  Later cases have contradicted, if not overruled, the broad dicta of *Monroe.  See, e.g., Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Bonner v. Coughlin,* 517 F.2d 1311 (7th Cir.1975), *modified en banc,* 545 F.2d 565 (1976).

Further, *Monroe* may be distinguished because the alleged state action involved a violation of the Fourth Amendment's search and seizure clause, rather than a denial of due process.  In the first instance the state action is complete and a constitutional violation has occurred, while in the latter circumstances the state action, for purposes of due process, is incomplete.  *Bonner v. Coughlin,* 517 F.2d 1311, 1320 n. 27 (7th Cir.1975).  Justice Stevens apparently would distinguish a case where the state action was completed from a pure due process claim where state procedures were available.  This case comes under the latter category.

*Grant Co.,* 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974)). Plaintiffs do not contest the adequacy of the postdeprivation procedures offered by the State of Illinois, and it appears that the state offers plaintiffs a fair opportunity for a judicial determination of liability.

The second prong of the *Eldridge* test is the risk of erroneous deprivation of the plaintiffs' interest. Recent cases, including *Parratt,* indicate that a subsequent hearing may satisfy this requirement. The Court's approach is functional and the risk of erroneous deprivation, of necessity, is tied to the adequacy of the hearing. *Ellis v. Hamilton,* 669 F.2d 510 (7th Cir.1982). The fundamental requirement of a hearing that complies with due process is an opportunity to be heard at a meaningful time and in a meaningful manner. *Parratt, supra,* 451 U.S. at 540, 101 S.Ct. at 1915 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). *Accord, Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 429, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982). Plaintiffs have not contended, and most likely could not contend, that they were denied the opportunity to have a meaningful hearing. This hearing, to be meaningful, must come before an individual is *finally* deprived of a property interest. *Logan, supra,* at 430, 102 S.Ct. at 1155; *Parratt, supra,* 451 U.S. at 540, 101 S.Ct. at 1915; *Eldridge, supra,* 424 U.S. at 333, 96 S.Ct. at 902.

The timing and nature of the required hearing depends on an accommodation of the competing interests. *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). It cannot be said that plaintiffs' property interest in compensation for overtime is of paramount importance. In this case it appears the State of Illinois has provided procedures tailored "to the capacities and circumstances of those who are to be heard." *Eldridge, supra,* 424 U.S. at 349, 96 S.Ct. at 909 (quoting *Goldberg v. Kelly,* 397 U.S. 254, 268–69, 90 S.Ct. 1011, 1020–21, 25 L.Ed.2d 287 (1970)). The due process clause of the Fourteenth Amendment requires no more.

The third prong of *Eldridge* examines the effect of the procedural safeguards on fiscal and administrative functions. To require a predeprivation hearing every time a government official's action or inaction might breach a contract, would create a heavy burden on the operation of government. It is doubtful that the drafters of the Fourteenth Amendment intended such a result. *Cf. Parratt, supra,* 451 U.S. at 544, 101 S.Ct. at 1917. While fiscal considerations are not the sole touchstone of procedural due process questions, any fiscal consideration will weigh heavily against Plaintiffs' cause.

Thus, this is a case where Plaintiffs have been temporarily denied a property interest and have an opportunity for an adequate hearing at a meaningful time. Since an analysis of the competing interests favors a postdeprivation remedy, Plaintiffs fail all prongs of the *Eldridge* test. Therefore, they were not deprived of their due process rights.

Recent cases support this Court's ruling that Defendants did not violate Plaintiffs' constitutional right to due process of law. In *Parratt v. Taylor, supra,* the Court held that a negligent tort injury, committed by state officials acting under color of law, did not constitute a deprivation of property without due process of law where there was an adequate, postdeprivation opportunity for an ultimate judicial determination of liability. The *Parratt* majority relied, in part, on the practical difficulty of having the state provide a hearing before the deprivation takes place. *Parratt v. Taylor, supra,* at 541, 101 S.Ct. at 1916. That same difficulty exists in the facts of this case. Remedies provided by the state in its courts can fully compensate the Plaintiffs, and the requirements of due process require no more than this. *Id.* at 544, 101 S.Ct. at 1917.

In *Parratt,* the court relied on *Bonner v. Coughlin,* 517 F.2d 1311 (7th Cir.1975), *modified en banc,* 545 F.2d 565 (1976), an opinion authored by Justice Stevens. There the prisoner-plaintiff returned to his cell and found that some of his property was miss-

ing. He alleged a deprivation of property prohibited by the Due Process Clause of the Fourteenth Amendment. The Court examined the negligent behavior of the guards in failing to close the cell door. It acknowledged that the plaintiff had a damage claim arising out of the state officers' misconduct. *Id.* at 1319. The court concluded that there could be no constitutional deprivation of property without due process of law until the completion of the state action. The state action was not complete while the state provided an adequate remedy to redress the plaintiff's property damage. "In this case the fact that Illinois stands ready to return Plaintiff's property or its economic equivalent is inconsistent with the conclusion that it has finally deprived Plaintiff of that property without due process of law." 517 F.2d at 1320 n. 7.

Justice Stevens had occasion to explain his *Bonner* decision in *Kimbrough v. O'Neil,* 523 F.2d 1057 (7th Cir.1973), *rev'd en banc,* 545 F.2d 1059 (1976). In *Kimbrough,* the plaintiff's property was taken while he was incarcerated at a county jail. The complaint alleged that the defendants had acted deliberately with an intent to punish the plaintiff. Justice Stevens, concurring on other grounds, believed that there was no action taken by the state without due process of law. 523 F.2d at 1066. He reached this conclusion because the deprivation of property was occasioned by the unauthorized acts of the guards. He explained his *Bonner* opinion as holding that the federal interest in due process was vindicated by an adequate state procedure to redress the wrong. He was unconcerned with the intent of the particular actor as long as no constitutional safeguards other than due process were alleged. "The mere fact that the plaintiff is the victim of a tort committed by a state official rather than a private party does not, in my judgment, provide an adequate basis for affording him a federal remedy." *Id.*

The viewpoint of the United States Court of Appeals for the Seventh Circuit on what constitutes a deprivation of due process is elucidated by *Ellis v. Hamilton,* 669 F.2d 510 (7th Cir.1982). The *Ellis* plaintiffs were the natural parents and adoptive parents of Larry Frazier. Larry, a most unsatisfactory parent by any definition of the term, had four children who lived with the plaintiffs for long periods of time. Larry eventually abandoned the children with the plaintiffs. The defendant welfare officials ordered the plaintiffs to surrender the children to them. Defendants placed the children in foster homes, began proceedings to terminate the rights of Larry Frazier, and eventually the children were adopted by others even though plaintiffs attempted to adopt the children.[2] 669 F.2d at 511–12. For the purpose of his *Ellis* opinion, Judge Posner assumed that the plaintiffs, as custodians of the children, had been deprived of a liberty interest. This interest was sufficient to support an action under section 1983. *Id.* at 514. Thus, the court was faced with a situation where the plaintiffs had been intentionally deprived of a liberty interest by individuals acting under color of law. Even under these circumstances, the court held "that there is no denial of due process if the state provides reasonable remedies for preventing families from being arbitrarily broken up by local domestic relations officers such as the defendants in this case." *Id.* at 515. Judge Posner then outlined several remedies available to the plaintiffs under Indiana law. On the practical side he noted:

> If due process were denied every time local officials blundered, then any plaintiff in state court who was asserting a right within the broadly defined categories of liberty or property and who lost his case because the judge made an error could attack the judgment indirectly by suing the judge under 1983. That would be an intolerable interference with the orderly operations of state courts. Due process is denied in such a case only if the state fails to provide adequate machinery for the correction of the inevitable errors

2. Plaintiffs alleged the welfare officials gave them the runaround, and objected to the formal adequacy of their adoption petition. 669 F.2d at 512.

that occur in legal proceedings—unless the defendants act with such ruthless speed that the machinery of correction cannot be brought into play in time.

*Id.* at 514.

*Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), like *Ellis,* involved a restraint on the personal liberties of an individual. *Ingraham* concerns corporal punishment of school children, and the timing and extent of the procedure due. Where the school authorities could be held liable in a state court for damages inflicted on a recalcitrant child, a postdeprivation remedy was all due process required under the Fourteenth Amendment.

Plaintiffs argue that they were denied due process because an established state procedure or practice denied them property. In support of this contention, Plaintiffs rely on *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). In *Logan,* the plaintiff filed a charge with the Illinois Fair Employment Commission alleging that his employment was unlawfully terminated. The filing of the charge created a statutory obligation on the part of the commission to hold a fact-finding conference within 120 days, but the Commission scheduled the conference for after the statutory period. The Illinois Supreme Court held that the faulty scheduling deprived the Commission of jurisdiction. *Logan, supra,* at 422–423, 102 S.Ct. at 1150–51. The United States Supreme Court distinguished its *Parratt* decision because that decision dealt with a "tortious loss of . . . property as a result of some unauthorized act by a state employee . . . not a result of some established state procedure." *Id.* at 435, 102 S.Ct. at 1158 (quoting *Parratt v. Taylor,* 451 U.S. at 541, 101 S.Ct. at 1916). In *Logan,* the state system or procedure deprived a person of his claim in a random manner.

While Plaintiffs' argument is not completely without merit, a consideration of all the cases leads me to disagree with its conclusion. *Logan* is consistent with this analysis. The plaintiff in *Logan* was denied an opportunity to file a claim before the Illinois Fair Employment Commission. *Logan, supra,* 455 U.S. at 435, 102 S.Ct. at 1158. In this way, the state "terminated potentially meritorious claims in a random manner." *Id.* at n. 10. The plaintiff was denied certain remedies and he could never receive these remedies before other courts in Illinois' system. The system itself terminated the claims without ever granting the plaintiff an "opportunity at a meaningful . . . time and in a meaningful manner for a hearing appropriate to the nature of the case." *Id.* at 437, 102 S.Ct. at 1159. Plaintiffs in this case, unlike Mr. Logan, are not denied meaningful remedies by the State of Illinois.

Plaintiffs may argue, with some support, that defendants have intentionally deprived them of property, and that an intentional deprivation denies them due process. *Evans v. City of Chicago,* 689 F.2d 1286 (7th Cir.1982); *Kimbrough,* 523 F.2d at 1061; *Tarkowski v. Hoogasian,* 532 F.Supp. 791, 795 (N.D.Ill.1982). The cases, however, are not in harmony, and there are cases where a postdeprivation remedy was sufficient process for the government's intentional act. *See, e.g., Ingraham,* 430 U.S. at 651, 97 S.Ct. at 1402; *Eldridge,* 424 U.S. at 319, 96 S.Ct. at 895; *Ellis,* 669 F.2d at 510. Further, Justice Stevens, the author of the *Bonner* opinion relied on by the Supreme Court in *Parratt,* apparently believed a postdeprivation remedy was sufficient process for an intentional government act. *Kimbrough,* 523 F.2d at 1062 (Stevens, J., concurring). This Court believes the latter cases are better reasoned.

Accordingly, for the reasons previously stated, the Court denies Plaintiffs' motion for modification of judgment.