Joseph M. STARTZ, Plaintiff-Appellant,

v.

Dr. James CULLEN et al., Defendants-Appellees.

No. 47, Docket 72–1436.

United States Court of Appeals, Second Circuit.

Argued Oct. 11, 1972.

Decided Oct. 30, 1972.

Richard S. Cramer, Hartford, Conn. (Civil Legal Assistance to Prisoners, of counsel), for plaintiff-appellant.

Charles K. Thompson, Asst. Atty. Gen. (Robert K. Killian, Atty. Gen., Hartford, Conn., of counsel), for defendants-appellees.

Before FRIENDLY, Chief Judge, and MEDINA and ANDERSON, Circuit Judges.

PER CURIAM:

Joseph M. Startz, a prisoner at the Correctional Institution at Somers, Connecticut, appeals from an order of the District Court for Connecticut which dismissed his complaint under 42 U.S.C. § 1983 for injunctive relief and damages on the basis of affidavits and without a hearing.

In March 1970, prior to his present imprisonment, Startz suffered a heart attack which was diagnosed as a coronary occlusion with myocardial infarction. In the fall of 1971, the prison's consulting internist ordered extensive examinations and studies at St. Francis Hospital in Hartford, which lasted from September 29 to October 12. These resulted in a diagnosis of coronary insufficiency with arteriosclerotic heart disease and a number of other ailments. Startz' complaint alleged that two St. Francis Hospital doctors had prescribed a strict fat-free diet and had "ordered" the prison medical authorities to place him on it, but that the authorities had failed to do this.

The defendants' version, presented in an affidavit of Dr. Cullen, the Hospital Clinical Director at Somers, was this:

After Startz' return from St. Francis Hospital, he was placed in the prison hospital for nine days of observation and follow-up care and was started on five medicines, recommended by the cardiologists, which have the effect, among others, of inhibiting the body's utilization of fats, lowering blood pressure, and relieving chest pain. He was told what foods he might eat and given a diet list. When he complained about his inability to follow the diet, he was permitted to eat in the prison hospital, where a nurse has supervised two of his meals, and a hospital attendant the third. Startz responded with an affidavit in which he claimed that defendants had made no effort to supply a fat-free diet until November 25, 1971, ten days after the filing of his complaint, and that he was still not receiving the diet prescribed by the St. Francis Hospital staff.

■■ If decision turned on the precise diet afforded Startz since his return from St. Francis Hospital, as might be the case on an application by Startz to a Connecticut court having general jurisdiction over prisoner complaints, it might be that a hearing would have been required. However, the scope of the authority of a federal court is much narrower; it is confined to determining whether the medical treatment of the prisoner is so shocking as to constitute a denial of due process prohibited by the Fourteenth Amendment or a cruel and unusual punishment forbidden by the Eighth Amendment, selectively incorporated into the Fourteenth. Church v. Hegstrom, 416 F.2d 449 (2 Cir. 1969); United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2 Cir. 1970); Martinez v. Mancusi, 443 F.2d 921 (2 Cir. 1970), cert. denied, 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971). Here it is evident that the prison authorities have made and are making a sincere and reasonable effort to handle Startz' problems. Whether they are giving him the precise diet recommended by the St. Francis doctors or are assisting him to choose proper foods from a less restricted list, along with medication, their conduct is far removed from the reckless failure to

**562**

inform themselves of a prisoner's medical needs which we held, in Martinez v. Mancusi, *supra,* 443 F.2d at 924, to be the equivalent of intentionally inflicted harm. Compare Prosser, Torts § 8 (1971 ed.).

█ Appellant's reliance on Hudson v. Hardy, 134 U.S.App.D.C. 44, 412 F.2d 1091 (1969) is misplaced. Since Startz attempted to counter Dr. Cullen's affidavit with one of his own, it cannot be said that he was unaware of the need to do so in order to resist dismissal.

Affirmed.