**Darrell R. PAGE, Appellant,**

**v.**

**Charles R. SHARPE et al., Appellees.**

**No. 73–1234.**

United States Court of Appeals,
First Circuit.

Argued Sept. 6, 1973.

Decided Oct. 29, 1973.

---

Darrell R. Page, pro se.

John J. Flaherty, Portland, Me., with whom Gerald F. Petruccelli and Preti & Flaherty, Portland, Me., were on brief, for Guy Gannett Pub. Co., appellee.

Gerald F. Petruccelli, Portland, Me., with whom John J. Flaherty, and Preti & Flaherty, Portland, Me., were on brief, for Charles Sharpe and Edward Miller, appellees and with whom Joseph E. Brennan and Brennan & Brennan, Portland, Me., were on brief, for Joseph E. Brennan, appellee.

Before McENTEE, KILKENNY* and CAMPBELL, Circuit Judges.

KILKENNY, Circuit Judge:

This is a *pro se* appeal from the dismissal of what appears to be a civil rights action under 42 U.S.C. §§ 1983 and 1985 and 28 U.S.C. § 1343. The lower court dismissed the action for failure of the complaint to state a claim

---

* Of the Ninth Circuit Court of Appeals, sitting by designation.

upon which relief could be granted. We affirm.

Appellant's claims grow out of his indictment, trial and conviction by a jury of the crime of depositing in a United States Post Office an envelope containing a communication that threatened to injure the persons of those in charge of the Adjudication Division of the Veterans Administration Center, Togus, Maine. [18 U.S.C. § 876]. Appellee Sharpe was the sheriff of Cumberland County, Maine where appellant was incarcerated while awaiting sentencing in the United States District Court. Appellee Miller was Sharpe's deputy. Appellee Brennan represented appellant in the early stages of the prosecution. Appellee Connellan was appellant's attorney during the trial. Appellee Guy Gannett Publishing Company is the publisher of the Portland Press Herald, a newspaper.

We consider appellant's arguments *seriatim*.

## CLAIMS AGAINST SHARPE & MILLER

In substance, appellant attempts to charge Sharpe and Miller with: (1) failure to provide proper medical care; (2) failure to provide law books; and (3) with censorship of mail.

(1) We are impressed with the rule stated in Church v. Hegstrom, 416 F.2d 449 (C.A.2 1969), i. e. that a denial of medical care to a prisoner is actionable under § 1983 only if the complaint alleges: (1) either an intent to harm the inmate, or (2) an injury or illness so severe or obvious as to require medical attention. Mere negligence, in the absence of conduct which shocks the conscience, in giving or failing to supply medical treatment to prisoners will not suffice. Church v. Hegstrom, *supra*. We search in vain for anything in the complaint which would bring appellant within the rule stated in *Hegstrom*. Martinez v. Mancusi, 443 F.2d 921 (C.A.2 1970), reaffirms the doctrine enunciated in *Hegstrom*.

(2) The claim of unavailability of law books has even less merit. Under no stretch of the imagination is a county sheriff, or his subordinates, required to supply law books. Hatfield v. Bailleux, 290 F.2d 632 (C.A.9 1961). Needless to say, an entirely different issue would be presented if we were faced with an allegation that law books were available and that appellant was refused access. We are not here concerned with issues like those presented in Gilmore v. Lynch, 319 F.Supp. 105 (N.D.Cal.1970), aff'd sub nom., 404 U.S. 15, 92 S.Ct. 250, 30 L. Ed.2d 142 (1971), featuring jailhouse lawyers and in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), presenting similar issues.

(3) On the charge of mail consorship, the appellant seems to be playing with words. The closest he comes to a factual statement is that he wrote two letters to a Boston attorney, that the letters were censored and that the attorney never received them. He does not charge that appellees censored the letters or that they were in any way responsible for the failure of delivery. Moreover, the complaint makes it clear that appellee Brennan was then representing the appellant as his attorney. The letters were not addressed to Brennan. Obviously, appellant suffered no harm by reason of the failure of the letters to reach an attorney who was in no way associated in the defense. Our holding on this issue in no way limits or detracts from the expressions of this court on the same general subject in Smith v. Robbins, 454 F.2d 696 (C.A.1 1972); Nolan v. Scafati, 430 F.2d 548 (C.A.1 1970); Tyree v. Fitzpatrick, 325 F.Supp. 554 (D.Mass.1971), aff'd. 445 F.2d 627 (C.A.1 1971), and Nolan v. Fitzpatrick, 451 F.2d 545 (C.A.1 1971).

## CLAIMS AGAINST BRENNAN

Appellee Brennan was appellant's court appointed attorney on October 5, 1970, when appellant withdrew his previously entered plea of not guilty and agreed in open court that the arraignment and further prosecution on the in-

dictment would be postponed and appellant placed on informal probation for a period of two years under the usual conditions. At the time, the United States Attorney indicated that upon successful completion of the informal probation period, the indictment would be dismissed. Appellant was unable to live up to the conditions of the probation and on February 26, 1971, was again before the court for arraignment. He requested new counsel. However, on investigation, the court found that he was financially able to employ his own attorney. On March 18th, the informal probation was terminated. Appellant was then arraigned and entered a plea of not guilty. He charges Brennan with "tortious malpractice" in recommending acceptance of the informal probation. He says that on the revocation of the "unofficial probation": ". . . [H]e was quite disturbed to learn for the first time that the procedure was not authorized by federal statute." Evidently, in proceeding under 42 U.S.C. §§ 1983 and 1985, appellant is of the impression that an appointed attorney representing a client in the defense of a criminal charge in federal court is acting under color of state law, within the meaning of the statute. He cites no authority and we find none which supports this view. To the contrary, even under state court appointments, the courts have uniformly held that an attorney, whether appointed or retained, is not acting under color of law. Szijarto v. Legeman, 466 F.2d 864 (C.A.9 1972); French v. Corrigan, 432 F.2d 1211, 1214 (C.A.7 1970), cert. denied 401 U.S. 915, 91 S.Ct. 890, 27 L. Ed.2d 814 (1971); Mulligan v. Schlachter, 389 F.2d 231, 233 (C.A.6 1968); Kregger v. Posner, 248 F.Supp. 804, 806 (E.D.Mich.1966). Appellant's contention that Brennan conspired with the United States Attorney is conclusory only and completely devoid of an allegation of fact.

■ Additionally, even assuming that Brennan was an officer acting under color of state authority, the vague charges in the complaint defy intelligent analysis and do not state a claim on which relief can be granted.

### CLAIMS AGAINST CONNELLAN

After the probation was revoked in February, 1971, appellee Connellan, an attorney, was engaged to defend appellant. Connellan is likewise charged with "tortious malpractice." What we have said about the Brennan claim with reference to it not being subject to the provisions of either 42 U.S.C. § 1983 or 1985, is equally applicable to the claim against appellee Connellan. Simply stated, the complaint does not state a claim against appellee under either section. A detailed statement of the charges would serve no useful purpose.

### CLAIM AGAINST GUY GANNETT PUBLISHING COMPANY

■ In substance, appellant claims that: (1) Gannett suppressed judicial scandals in Maine and New Hampshire, although he does not allege the facts disclosing the alleged scandals; (2) appellee assured appellant that it would have a reporter available for his trial on July 12, 1971, and that such a reporter was not present; (3) although there was no reporter present, the appellee printed a story in its newspaper which was "colored" in that it did not, in fact, cover the trial and suppressed the facts with reference to law book deficiencies and appellant's other claims; (4) appellee did not get its story from covering the trial with a reporter, but from an interview with the United States Attorney which did not report all of the facts with reference to the theory of his defense; and (5) that Gannett was guilty of "tortious misuse, abuse, non-use, and with improperly safeguarding the appellant's rights in connection with the publication of the material on his trial."

The most that can be said of the charges against Gannett is that it may have been careless in not having a reporter present and may have been negligent in failing to report appellant's contentions. We find nothing in the charges which would even remotely sug-

gest a claim of actual malice. Gannett's First Amendment rights preclude a recovery unless actual malice is alleged. New York Times Co. v. Sullivan, 376 U. S. 254, 279, 283–284, 84 S.Ct. 710, 11 L. Ed.2d 686 (1964), and its progeny. The complaint does not state a claim, civil rights or otherwise, against Gannett.

## CONCLUSIONS

Utilizing, as we must, the well established rule that appellant's *pro se* complaint must be liberally construed, we find nothing in it which even remotely states a claim against any one or more of the appellees. Accordingly, the judgment of the lower court must be affirmed.

It is so ordered.