Alonzo **BONNER**, Plaintiff-Appellant,

v.

Joseph **COUGHLIN** et al., Defendants-Appellees.

No. 74–1422.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 1976.

Decided Oct. 28, 1976.

Amendment on Rehearing Denied Nov. 18, 1976.

Kenneth N. Flaxman, Thomas R. Meites, Chicago, Ill., for plaintiff-appellant; Frank S. Merritt, Prisoners Legal Assistance, Chicago, Ill., on the brief amicus curiae.

William J. Scott, Atty. Gen., Jayne A. Carr, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT, CUMMINGS, PELL, SPRECHER, TONE and BAUER, Circuit Judges.*

CUMMINGS, Circuit Judge.

The facts are fully stated in the panel opinion (517 F.2d 1311 (7th Cir. 1975)) and need not be restated in detail. The sole question before us *en banc* is whether Bonner may recover damages under 42 U.S.C. § 1983 for the loss of a copy of his trial transcript because Illinois prison guards had negligently left his cell door open after a security search. Bonner asserts that this was a taking of his property without due process of law within the meaning of the Fourteenth Amendment and done under color of state law [1] so that it was actionable under 42 U.S.C. § 1983 which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

We hold that Section 1983 does not provide a remedy.

As stated in the panel opinion, when Bonner returned to his cell in November 1972 after a work assignment, his cell door was ajar and his personal belongings were strewn on the floor. A copy of his trial transcript was missing. The defendants, the Acting Director of the Illinois Department of Corrections, the prison warden and two prison guards, have not denied the allegation that the guards left the cell door open after they had completed the security search. One of Bonner's claims for recovery is that the guards' negligence in leaving his cell door open enabled an unknown person to remove the trial transcript from his cell. The question posed is whether Bonner was thus deprived of his Fourteenth Amendment right not to have his property taken by state action without due process of law.

In *Paul v. Davis,* 424 U.S. 693, 699, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405, the Supreme Court refused to hold that the due process clause of the Fourteenth Amendment and Section 1983 "make actionable many wrongs inflicted by government employees which had heretofore been thought to give rise only to state law tort claims." Bonner does not contend that the guards deliberately took his trial transcript in violation of the due process clause. Rather he asserts that their negligence permitted some one else to take it. As *Paul* explains, the Fourteenth Amendment does not extend to such a claim. Speaking for five members of the Court,[2] Justice Rehnquist pointed out:

state law but does not show why the Fourteenth Amendment was violated.

---

* Judge Wood was not a member of this Court at the time of oral argument and therefore did not participate in the decision.

1. Bonner's suppplemental brief on rehearing contends that the guards acted under color of

2. The Chief Justice and Justices Stewart, Blackmun and Powell joined in the opinion of

"Respondent, however, has pointed to no specific constitutional guarantee safeguarding the interest he asserts has been invaded. Rather he apparently believes that the Fourteenth Amendment's Due Process Clause should *ex proprio vigore* extend to him a right to be free of injury wherever the State may be characterized as the tortfeasor. But such a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States. We have noted the 'constitutional shoals' that confront any attempt to derive from congressional civil rights statutes a body of general federal tort law, *Griffin v. Breckenridge,* 403 U.S. 88, 101–102, [91 S.Ct. 1790, 1797–98 29 L.Ed.2d 338, 347–48] (1971); a *fortiori* the procedural guarantees of the Due Process Clause cannot be the source for such law." (424 U.S. at 700, 96 S.Ct. at 1160.)

Similarly here the plaintiff has pointed to no specific constitutional guarantee against the negligence of the two prison guards, even though they might be tortfeasors under Illinois law. The dissenting Justices [3] in *Paul* were of the view that "intentional conduct" infringing a person's liberty or property interests without due process of law is within the reach of Section 1983 (424 U.S. at 720, 96 S.Ct. at 1170). They went no further, nor need we. If Section 1983 is to be extended to cover claims based on mere negligence, the Supreme Court should lead the way.

■ We hold that the negligence of the guards which caused the loss of Bonner's transcript was not a State deprivation of property without due process of law under the Fourteenth Amendment nor action "under color of state law" under Section 1983. No "constitutional tort" has been alleged. In essence, Bonner's claim reduces to an assertion that substantive due process provides the foundation for an attack on the

prison guards' conduct. It was precisely such an *ex proprio vigore* extension of the substantive aspect of due process that the Supreme Court rejected in *Paul.* Here there was no state action depriving Bonner of property under the Fourteenth Amendment because any state action ended when the guards left the cell after the security search. The loss of the transcript did not occur until after state action had terminated. Similarly, the taking of the transcript was not under color of state law because it was neither encouraged nor condoned by state agents. Any causation between the negligence of the prison guards in leaving the cell door open and Bonner's transcript loss was insufficient to satisfy Section 1983 because it was not alleged that the guards' actions were either intentional or in reckless disregard of Bonner's constitutional rights.

In *Monroe v. Pape,* 365 U.S. 167, 187, 207, 81 S.Ct. 473, 494, 5 L.Ed.2d 492, on which plaintiff heavily relies, the Court held that "insofar as [Section 1983] creates an action for damages, [it] must be read in light of the familiar basis of tort liability that a man is responsible for the natural consequences of his acts." The *Monroe* standard dealt with facts showing intentional conduct by police which they were legally bound to know would deprive Monroe of constitutional rights. All that the "tort liability" language of *Monroe* really establishes is that a specific intent to violate constitutional rights of the plaintiff is not required for a Section 1983 violation. But the introduction of a general intent yardstick into the determination of whether conduct is State action or has been performed "under color of state law" does not mean that mere negligence is actionable under Section 1983.[4] The guards' culpability here was not of sufficient magnitude to constitute a deprivation of rights under Section 1983.

---

the Court. Justice Stevens did not participate in the consideration or decision of the case.

**3.** Justices White and Marshall concurred in Justice Brennan's dissenting opinion.

**4.** See McCormack, *Federalism and Section 1983: Limitations on Judicial Enforcement of Constitutional Protections, Part I,* 60 Va.L.Rev. 1, 54–55 (1974).

Our conclusion is reinforced by analogy to *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 232, dealing with official immunity under Section 1983. Under *Strickland,* there would be no liability for damages caused by an official unless he knew or should have known that he was violating the claimant's constitutional rights or had malicious intent to injure him.[5] As Chief Judge Fairchild and then Judge Stevens stated in *Thomas v. Pate,* 516 F.2d 889, 891 n. 2 (7th Cir. 1975), certiorari denied, 423 U.S. 877, 96 S.Ct. 149, 46 L.Ed.2d 110, under *Strickland,* to recover damages against prison officials in a Section 1983 action,

> "a plaintiff must prove that the defendant has acted within the sphere of his official responsibility, 'with the malicious intention to cause a deprivation of constitutional rights or other injury to the [plaintiff] or 'with such disregard to the [plaintiff's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith.' "[6]

Neither test is satisfied by this complaint.

*Monroe v. Pape, supra,* also carefully traced the legislative history of Section 1983.[7] Neither the language of the statute nor its history shows that Congress was providing a federal remedy for damages caused by the simple negligence of a state employee. In enacting the Civil Rights Act, Congress was obviously intending to provide a deterrent for the type of conduct proscribed. If an officer intentionally causes a property loss, a remedy under Section 1983 might deter similar misconduct. On the other hand, extending Section 1983 to cases of simple negligence would not deter future inadvertence as much as in the case of intentional or reckless conduct. Consequently, the majority of Circuits hold that mere negligence does not state a claim under Section 1983.[8] Otherwise the federal courts would be inundated with state tort cases in the absence of Congressional intent to widen federal jurisdiction so drastically.

■ Our prior decisions, while sometimes containing broad dicta helpful to Bonner, are not to the contrary. The intentional arrest in *Joseph v. Rowlen,* 402 F.2d 367 (7th Cir. 1968), was made on a charge for which the defendant police knew they did not have probable cause. Consequently the warrantless arrest was in plain violation of the Fourth Amendment, thus activating Section 1983. In *Byrd v. Brishke,* 466 F.2d 6 (7th Cir. 1972), the defendant officers failed to stop other officers who were beating plaintiff in defendants' presence. While intentional torts ordinarily require some affirmative conduct, purposeful nonfeasance can also serve as the basis of liability for an intentional tort if the defendant

---

5. See also *O'Connor v. Donaldson,* 422 U.S. 563, 577, 95 S.Ct. 2486, 45 L.Ed.2d 396.

6. See also *Knell v. Bensinger,* 522 F.2d 720 (7th Cir. 1975).

7. In view of *Monroe v. Pape,* we do not hold that Section 1983 is inapplicable on the ground that plaintiff has an adequate remedy in the Illinois courts.

8. *Page v. Sharpe,* 487 F.2d 567 (1st Cir. 1973); *Williams v. Vincent,* 508 F.2d 541 (2d Cir. 1974); *Howell v. Cataldi,* 464 F.2d 272 (3d Cir. 1972); *Collins v. Florida,* 432 F.2d 60 (5th Cir. 1970); *Puckett v. Cox,* 456 F.2d 233 (6th Cir. 1972); *Brown v. United States,* 486 F.2d 284, 287 (8th Cir. 1973); *Williams v. Field,* 416 F.2d 483 (9th Cir. 1969), certiorari denied, 397 U.S. 1016, 90 S.Ct. 1252, 25 L.Ed.2d 431; *Daniels v. VanDeVenter,* 382 F.2d 29 (10th Cir. 1967). Contra, *McCray v. Maryland,* 456 F.2d 1 (4th Cir. 1972); *Whirl v. Kern,* 407 F.2d 781 (5th Cir. 1969), certiorari denied, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177; *Navarette v. Enomoto,* 536 F.2d 277 (9th Cir. 1976); *Carter v. Carlson,* 144 U.S.App.D.C. 388, 447 F.2d 358, 365 (1971), reversed on other grounds, 409 U.S. 418, 92 S.Ct. 683, 30 L.Ed.2d 661. The *Whirl* holding has been partially eroded by *Bryan v. Jones,* 530 F.2d 1210 (5th Cir. 1976) *(en banc).*

Indeed the support the minority view provides for the proposition that mere negligence is actionable under Section 1983 may be generally dismissed as dicta. These cases either involve intentional or reckless conduct with a failure to appreciate that the results of the conduct would be unconstitutional or negligent conduct which results in the deprivation of a clearly established constitutional right independent of a generalized claim based on substantive due process. Negligent conduct, without more, resulting in an injury to a property right does not seem to have direct support even in those Circuits subscribing to the minority view.

owes the plaintiff a duty to act. Thus defendants' failure to act in *Byrd* can be properly characterized as ·"intentional." Likewise, in *Spence v. Staras,* 507 F.2d 554, 557 (7th Cir. 1974), plaintiff did not, as here, allege "mere negligent supervision." There the defendants allegedly failed to protect the deceased even though they knew he had been beaten on at least twenty prior occasions and that he was nonverbal and unable to call for help or defend himself when attacked. In all three cases, the plaintiffs were not relying only on an isolated instance of defendants' mere negligence. Furthermore, each was decided prior to *Paul v. Davis, supra.*

Today's holding finds support in prior decisions of this Court. In *Gutierrez v. Department of Public Safety,* 479 F.2d 701, 719–720 (7th Cir. 1973), certiorari denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102, involving the interplay of the Eighth Amendment and Section 1983, the plaintiff was assaulted because defendants had failed to prevent the assault from taking place. We held there could be no recovery in the absence of intentional infliction of cruel punishment or of such callous indifference that an intent to inflict unwarranted harm could be inferred. Defendants' negligence was deemed insufficient. In *Carroll v. Sielaff,* 514 F.2d 415 (7th Cir. 1975), the defendants admittedly confiscated the prisoner plaintiffs' typewriter and currency. A cause of action was stated under Section 1983 because of the unlawful and intentional deprivation of property. Similarly, in *Kimbrough v. O'Neil,* 523 F.2d 1057 (7th Cir. 1975), the defendant deputy sheriff took plaintiff's $2500 ring from him when he was jailed and refused to return it upon his release from custody. None of these cases held negligence actionable under Section 1983.

Bonner relies on *Navarette v. Enomoto,* 536 F.2d 277 (9th Cir. 1976), as authorizing recovery under Section 1983 for negligent acts. If *Navarette* does concern mere negligence, we respectfully disagree. However, *Navarette* apparently concerned negligent conduct resulting in the deprivation of the prisoner's "fundamental and reasonably well-defined" constitutional rights. *Id.* at 282. The defendants' actions impeded plaintiff's right to correspond through the mail as well as his right to access to the courts. Bonner, however, only points to a generalized due process right. And again, *Navarette,* other cases cited therein, and similar cases cited by Bonner were decided before *Paul v. Davis, supra,* and therefore are no longer dispositive.

To sum up, the only constitutional right which could be the subject of Bonner's Count II is his Fourteenth Amendment right not to be deprived of property by state action without due process of law. The property was taken by some person not claimed to be acting under color of law. The guards were acting under color of law in and about his cell and allegedly their negligence facilitated the taking of the transcript by someone else. There is no claim that the guards intended the result or even acted in reckless disregard of Bonner's constitutional rights. Given that lack of intent and lack of reckless disregard, we hold that in the context of Section 1983 the guards did not deprive him of his property and, therefore, did not cause him to be subjected to the deprivation of his Fourteenth Amendment right not to have his property taken by the State without due process.

Insofar as the district court granted summary judgment for defendants with respect to plaintiff's alternative claim based on negligence under Section 1983, it is affirmed.[9]

SWYGERT, Circuit Judge (dissenting).

Plaintiff Alonzo Bonner alleged in his complaint that while he was absent from his cell, prison guards entered the cell and conducted a search pursuant to prison regulations that provide for such actions for security reasons. Bonner asserts that the guards ransacked his cell during their search. When he returned he found the cell

---

9. We reaffirm the panel's prior judgment as to the remaining claims.

door open, his belongings in disarray, and the transcript of the murder trial at which he was convicted missing. He was at that time in the process of preparing documents in order to secure review of that conviction. Bonner's original copy of the transcript was never returned, although he was eventually provided with another copy. In his complaint Bonner presented alternative allegations concerning this incident: either the defendants had intentionally taken the transcript or their negligence in leaving the cell door open after conducting the search had been the proximate cause of the removal of the transcript by some unknown person.

In his complaint seeking damages under section 1983, the plaintiff advanced three separate theories of recovery: that his transcript was taken during the course of a search that violated his Fourth Amendment rights, that the taking was a deprivation of his property without due process of law in violation of the Fourteenth Amendment, and that the defendants interfered with his access to the courts protected by the Sixth Amendment.

The district court granted the defendants' motion for summary judgment on the grounds that the deprivation to Bonner ended when a substitute copy of his state court transcript was furnished him and that there had been no cognizable injury to the plaintiff as a result of the deprivation.

A majority of the panel reversed the district court, finding that a factual dispute existed as to whether the temporary deprivation of the transcript constituted an impairment of Bonner's Sixth Amendment right to access to the courts. The panel also held that a prisoner "enjoys the protection of the Fourth Amendment against unreasonable searches, at least to some minimal extent" and that Bonner had stated a Fourth Amendment claim with respect to the seizure of his state court transcript.

The second portion of the panel's opinion rejected the plaintiff's Fourteenth Amendment claim because it found that the existence of an adequate state remedy avoided any violation of the due process clause.

The panel therefore never reached the question of whether non-intentional but negligent conduct by state officials resulting in the loss of property is enough to support an action under section 1983.

The sole issue before the *en banc* court is the viability of plaintiff's due process claim. The panel's findings on the Fourth and Sixth Amendment issues were not reviewed *en banc*.

The *en banc* majority rejected the approach of the panel and decided the broad issue of whether negligence by state officials could justify relief under section 1983. I shall first indicate where I disagree with the *en banc* majority opinion. Second, I shall attempt to delineate the approach I would take in deciding this type of case. Finally, I shall sketch my objections to the approach taken by the panel.

I

The *en banc* majority holds "that the negligence of the guards which caused the loss of Bonner's transcript was not a State deprivation of property without due process of law under the Fourteenth Amendment nor action 'under color of state law' under Section 1983." With due deference to my esteemed colleagues, I feel compelled to say that this statement is indicative of the vague and generalized mode of analysis which the majority has utilized. By lumping together the two requirements for stating a cause of action under section 1983—deprivation of constitutional rights and action under color of state law—the majority confuses the issues in this case. This conceptual confusion is a pervasive undertone throughout the majority opinion. The two concepts are, in fact, quite different and should be treated separately. The first deals with whether the plaintiff's interests have been violated, regardless of who violated them. Only when the plaintiff has established that his interests are protected under the Constitution does the second requirement become important: that the injury was the result of state involvement and therefore falls within the ambit of the "under color" language of section 1983.

Thus, the second concept revolves around the defendant's conduct rather than the plaintiff's interests. *See Dombrowski v. Dowling,* 459 F.2d 190, 193–94 (7th Cir. 1972).

### A.

The *en banc* majority, relying on *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), holds that Bonner's interest in his transcript was not a protected right under the Fourteenth Amendment because, it asserts, that amendment does not protect interests which are violated through mere negligence. This holding is illogical. Whether Bonner's interest in his transcript is a protected right is completely unrelated to whether the agency that impaired that interest did so intentionally or negligently. The Fourteenth Amendment protects deprivations of "life, liberty, or property, without due process of law." In determining whether Bonner had a protected right, the sole question to be decided is whether the loss of the transcript falls within any of those categories. Bonner still will not be able to prove a section 1983 violation unless he can also show that the state was involved in the impairment of his interests. But that is a separate inquiry, irrelevant to whether a protected right of the plaintiff is at stake.

The problems with this aspect of the majority's opinion can be demonstrated by considering the facts in *Whirl v. Kern,* 407 F.2d 781 (5th Cir.), *cert. denied,* 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969). In *Whirl,* negligence in the Harris County, Texas sheriff's office caused the imprisonment of the plaintiff for nine months following the dismissal of all charges against him. It would be ludicrous to assert that Whirl did not have a protected right under the Fourteenth Amendment—in this case, his right not be deprived of liberty without due process of law—simply because his wrongful imprisonment was the result of negligence rather than an intentional act. The Fifth Circuit had no difficulty in ruling that he had a protected right despite the lack of intentional conduct by the sheriff.

The *en banc* majority also states that Bonner has pointed to no specific constitutional guarantee against the negligence of the prison guards, and therefore has no protected right under the Supreme Court's construction of the Fourteenth Amendment in *Paul v. Davis.* This is incorrect. Bonner relies on the specific language in the Fourteenth Amendment prohibiting the state from depriving him of his property—the transcript—without due process of law.

Moreover, *Paul* supports rather than undercuts Bonner's claim. In *Paul,* the Court held that an individual's interest attains the constitutionally protected status of "liberty" or "property" if it has "been initially recognized and protected by state law." 424 U.S. at 710, 96 S.Ct. at 1165. Davis had no protected liberty interest in his reputation because state law did not extend to him "any legal guarantee of present enjoyment of reputation . . . ." *Id.* at 711, 96 S.Ct. at 1166. In contrast, Bonner's right to possession of his personal property, even while a prisoner, is a creature of state law. State law, in the form of prison regulations, guaranteed him the right to possession, at least as against other prisoners, of personal effects such as the transcript. His interest in the transcript is therefore a protected property right under the due process clause as interpreted in *Paul.*

In any event, whether or not Bonner has a protected right under *Paul* has nothing to do with the distinction between negligence and intentional conduct which the *en banc* majority draws. That distinction is useless in this context.

### B.

The *en banc* majority also finds that the guards had taken no action under color of state law sufficient to trigger relief under section 1983 and suggests that negligent conduct can never be enough state action for purposes of that statute. I disagree with both propositions.

The majority's narrow holding that the negligence of the guards was not sufficiently connected to the loss of the transcript to be considered state action breaks down into

a contention that the guards' conduct was not the legal or proximate cause of Bonner's loss. As a matter of tort law, I find this conclusion surprising, because the loss of the transcript would not have occurred "but for" the failure of the guards to lock the door of Bonner's cell and was a foreseeable result of that failure. *See generally* W. Prosser, Handbook of the Law of Torts, 236–70 (4th ed. 1971).

Moreover, this finding, even if correct, does not support the court's thesis that negligent conduct will not support a right of action under section 1983. If there was no causation between the guards' negligent action in leaving the cell door open and the loss of the transcript, there would be no causation between the act of deliberately leaving the door unlocked and the theft of property from the cell. Whether or not the guards were aware of what they were doing has nothing to do with either how direct the causal chain was between their action and the subsequent entry by other inmates or the foreseeability of that entry if the door were left unlocked.

The *en banc* majority's broad holding that negligent conduct by state officials can never be action under color of state law for purposes of section 1983 suffers from the same difficulty. State action in constitutional law is a concept that is similar to legal or proximate cause in tort law. Whether the presence of the state is great enough to justify the sanctions of section 1983 must be decided by how much the conduct of the state was in fact related to the plaintiff's injury rather than by whether the state intended that conduct.

Therefore, it is a mistake to hold that *all* negligent conduct is not action under color of state law, just as it would be a mistake to hold that all intentional conduct is state action. The formulaic application of this distinction would lead to too many results that are obviously wrong and unjust. For example, it would be difficult to deny that the negligent conduct of officials in the sheriff's office in keeping the plaintiff in *Whirl* in prison after the charges against

him had been dismissed was action under color of state law. Similarly, if the guards who searched Bonner's cell had seized certain items because Bonner was not allowed to have them under prison regulations, and had negligently seized the transcript as well, it would be undisputed that the loss of the transcript resulted from action under color of state law.

## C.

The distinction between negligence and intentional conduct therefore has no explanatory power either in determining whether the plaintiff's interest which he alleges has been infringed is protected under the Constitution or whether the defendants' conduct is action under color of state law. It is relied upon by the *en banc* majority to prevent the inundation of the federal courts with state tort claims. There can be no question but that it performs that task admirably. The same function would be served, however, by rejecting every section 1983 case brought by plaintiffs with last names beginning with letters that come after "K" in the alphabet. Mere efficiency is not enough to justify a dichotomy that screens out cases which are obviously within the ambit of the injuries for which Congress intended to provide a remedy in section 1983.

Moreover, despite the *en banc* majority's attempt to imply otherwise, the proposition that section 1983 only covers intentional acts is not supported by the Supreme Court's decision in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). While the acts in *Monroe* were themselves intentional, the Court indicated that wilfulness was not required under section 1983, stating: "Section [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Id.* at 187, 81 S.Ct. at 484. In addition, nothing in the legislative history of section 1983 that the Court carefully developed indicates that negligent conduct is *per se* nonactionable under that statute.

The *en banc* majority also relies by analogy on *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 232 (1975), in which the Supreme Court held that school officials were immune from suits under section 1983 for actions taken in good faith. The majority asserts that only intentional acts can be lacking in good faith, and therefore state officials would always have immunity in section 1983 suits brought on the basis of negligent conduct.

This argument collapses upon examination. Its underlying premise is that good faith is nothing but the absence of bad faith, and since an official can only act in bad faith when he is acting intentionally, a nonintentional act can never be in bad faith. While it may be true that a nonintentional act cannot be in bad faith, it is *not* true that good faith is simply the absence of bad faith. Good faith requires that "[t]he official himself [is] acting sincerely and with a belief that he is doing right." *Wood,* 420 U.S. at 321, 95 S.Ct. at 1000. Such an affirmative belief is only possible with respect to intentional acts. It is nonsensical to speak of committing a negligent act in good faith. The guards who left the door to Bonner's cell unlocked could not have done so in good faith unless they were conscious of what they were doing, a hypothesis inconsistent with the assumption that they were merely negligent. Since the dichotomy between good and bad faith is irrelevant to negligent conduct, the majority's reliance on *Wood* is inapposite.

I therefore maintain that the distinction between negligence and intentional conduct in determining whether a section 1983 action can be brought is neither logical nor just. As the *en banc* majority has pointed out, the circuits are split on this issue. In my opinion it is a mistake for the court to adopt this distinction simply because it provides a neat and efficient method of keeping litigants out of federal courts.

## II

### A.

An initial difficulty with this case is that it arose within the context of a prison setting. It has often been stated that the federal courts cannot host a barrage of frequently insignificant prisoner's complaints. Of necessity, they have had to limit their consideration to only the most "serious" violations litigated by state prisoners. In addition, under our system of federalism, the federal courts are justifiably reluctant about intruding upon state activities.

While the federal courts have wisely refused the role of day by day supervisors of state prison systems, the Supreme Court has, at the same time, unequivocally indicated that prisoners are not to be deprived of constitutional protections which are consistent with the fact of their confinement. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971).

The question thus presented is how to ensure that state prisoners are not unconstitutionally denied their rights by affording them the benefits of section 1983 litigation while at the same time preserving the integrity of the federal courts' position within the system of federalism. To do this, the courts should construct a doctrinal framework for such litigation that prohibits them from delving too far into the detailed maintenance of state prison systems.

I believe that the appropriate analysis is not to differentiate state prison civil rights cases according to whether intentional or negligent conduct is involved in the actions of the state officials but rather to look to the nature and extent of the hardship imposed on the inmate.[1] As I have noted, the

1. This conclusion has been espoused by this circuit in the past. *Cf. Joseph v. Rowlen,* 402 F.2d 367 (7th Cir. 1968). Other circuits have agreed. *Whirl v. Kern,* 407 F.2d 781 (5th Cir.), *cert. denied,* 396 U.S. 901, 90 S.Ct. 210, 24

L.Ed.2d 177 (1969), cited the opinion in *Rowlen* with approval. A subsequent *en banc* decision by the Fifth Circuit indicates that it may be moving toward an approach similar to the one I

case before us presents difficulties because it deals with the complaint of a state prisoner. What initially was perceived as a difficulty, however, may provide the key for an analysis of the proper role for the federal courts. When considering section 1983 complaints, attention must be paid to the particularized factual setting in which the claims arise. This type of inquiry focuses on whether the actions involved arose under "color of state law." As the majority in the panel decision pointed out, the crucial questions revolves not around the officials' conduct, in instances involving prisoners, but around the nature of the duty the officials assume toward their charges. *See also* *Kimbrough v. O'Neil,* 523 F.2d 1057, 1064 (7th Cir. 1975) (Stevens, J., concurring).

Prisons house activity beyond mere confinement. Inmates are fed, exercised, given medical care, counselled, and educated, among other things. As prisoners they spend their entire existence interacting with the prison system in some fashion. The completeness with which state agents are involved with their prisoners could be viewed as clothing every movement of a prisoner's life with activity sufficient to equate confinement or prisoner status with state action for section 1983 purposes. If this were the case, the only question which would be left open is whether there had been a constitutional right violated in order to maintain a civil rights action. This was the approach followed by the panel in this case. The panel, however, found no action could be maintained because there was no Fourteenth Amendment right violated.

I cannot agree that if Bonner's allegations are correct that he has not been deprived of his property in violation of the Fourteenth Amendment's prohibition. But I also disagree with the panel's assumption that all conduct by prison officials constitutes state action for section 1983 purposes. It is necessary to analyze the term "state action" as applied to a prison context. This

I believe, will provide a workable method for differentiating those cases which are appropriate for section 1983 jurisdiction.[2]

B.

The Supreme Court's decision in *Monroe v. Pape* is instructive. That decision explicated the congressional purpose in enacting section 1983. According to the Court, a state official acts "under color of state law" when he engages in a misuse of power made possible only because he is clothed with the authority of the state. In 1871 Congress sought to redress the violations against the civil rights of black citizens which were perpetuated by the Ku Klux Klan. In addition to situations where states actually furthered the problem by sanctioning the malfeasance of their officials or by maintaining discriminatory laws, Congress also perceived a problem whereby the states had difficulty enforcing their own, presumably just, laws. In response, section 1983 was enacted to allow citizens to force state officials to carry out state laws. This remedy may be available to a wronged individual even if the failure on an official's part is due only to a "mere error in judgment." 365 U.S. at 477, n. 10, 81 S.Ct. 473. It is important to note that the focus of concern was on the misuse of authority legitimately conferred on its agents by the state.

When the state employs a person and authorizes him to carry out particular governmental functions, not all of his activities are directed solely to that objective. Nonetheless, the nature of his second by second activities would not be exactly the same were it not for his function of state authority. Some differentiation between those activities directed toward accomplishing the state objective and those which are incidental or individual must be made. A police officer driving a squad car might negligently pass through a stop sign and injure a

am suggesting. *Bryan v. Jones,* 530 F.2d 1210 (5th Cir. 1976).

**2.** *See* Chief Judge Fairchild's concurrence in the panel opinion, 517 F.2d at 1321, in which

attention was called to the adequacy of the negligence claim under section 1983 on "state action" and "under color of state law" grounds.

pedestrian in an intersection, but in this regard he should be viewed no differently than an ordinary civilian driver. It is true that but for his state authority he might not have been driving at that time or place and he may have been carrying out his duties at the time—scanning the streets for a robbery suspect, for example—but I believe that such an instance cannot fairly be characterized as a "misuse of power" which occurred while acting "under color of state law."

By contrast, a false arrest or an illegal search constitutes prototypical instances of such misuses of state authority. In these cases I believe that constitutional violations resulting from even "mere negligence" should be actionable under section 1983.

This reasoning can be applied to the prison setting. First, a distinction must be made between those activities of prison personnel which partake of the governmental role of a prison system and those remaining activities which flow inexorably from the fact of confinement. Activities falling into the first category always occur under color of state law, but only certain of the activities in the latter group can be so characterized.

The activities in the inherently governmental category include those having to do with security, discipline, and commerce between inmates and between inmates and persons outside the prison. Also encompassed within this category is the regulation of a prisoner's First Amendment activities undertaken in a manner consistent with the state's authority to incarcerate. Consequently, the search of a cell, the censorship of mail, and the process whereby a prisoner is considered for discipline for alleged infractions of prison rules would all be regarded as occurring under color of state law. If during the course of these kinds of activities a deprivation of a constitutional

right occurs, a section 1983 action should be maintainable.

The analysis for activities within the second classification is not as clear. Prison personnel act as custodians, providing food, shelter, exercise facilities, safety measures, and a host of other incidentals. These services must be offered as a consequence of the primary fact of imprisonment. A prisoner cannot, for example, call a private physician when he is ill and those in charge of his confinement must therefore assume that responsibility. *Cf. Fitzke v. Shappell,* 468 F.2d 1072, 1076 (6th Cir. 1972). Nothing inherently or peculiarly governmental occurs in the exercise of these functions. However, if there is a misuse of the custodial relationship such as allowing conditions to exist which amount to the infliction of cruel and unusual punishment, a section 1983 claim could be maintained. In that instance, the Eighth Amendment, rather than the Fourteenth Amendment, would provide the prohibition against the activity.

Inquiry into activities falling within the second category focuses, then, on whether they may be termed "cruel and unusual punishment." Simple negligence could rarely, if ever, result in such a situation.[3] For example, negligent failure to feed a prisoner on one occasion would not suffice absent extraordinary circumstances—perhaps knowledge that he suffered from anemia. *See McCray v. Sullivan,* 509 F.2d 1332 (5th Cir. 1975) (safety of prisoner); *Williams v. Vincent,* 508 F.2d 541 (2d Cir. 1974) (medical care). Continued failure to feed an inmate, however, would probably involve more than mere negligence. In any event, if prison officials received appropriate notification concerning such an incident, a prisoner's claim should be received with more sympathy by a court even if such notice did not provide a finding of "intent." In this category, "obvious neglect and intentional

---

**3.** Negligence or lack of reasonable care in carrying out the duties owed by prison officials to inmates in their charge can conceivably trigger appropriate complaints under the Eighth Amendment. *See Woodhous v. Commonwealth v. Virginia,* 487 F.2d 889 (4th Cir. 1973). In this regard, it may be necessary at some

later point to reevaluate the previous assumption that cruel and unusual punishment can never be inflicted except intentionally. *Bensinger v. Gutierrez, sub nom. U. S. ex rel. Miller v. Twomey,* 479 F.2d 701, 719–20 (7th Cir. 1973).

mistreatment" may indicate the necessity for federal intervention. *Cates v. Cirrone,* 422 F.2d 926 (8th Cir. 1970).

The examples I have set forth do not anticipate all cases involving negligence and section 1983 litigation, but I believe that this approach can be used to classify those cases which should be provided a federal forum under the civil rights acts. The primary factor in my analysis is the relationship between the person seeking section 1983 relief and the state whose power operates on him. It is this relationship that may properly be monitored by the federal courts under the authority of the civil rights acts. Misuse of state power, whether negligent or intentional, should be subject to redress in the federal courts.

I do not believe that the doctrinal framework I have suggested for section 1983 causes of action departs significantly from the existing law in this or other circuits. Many courts have reached conclusions consistent with this analysis though, admittedly, they have set forth different rationales for their results.[4]

Finally, it is necessary to apply this reasoning to the specific issue at bar. The loss of Bonner's transcript occurred as a result of the search of his cell pursuant to a regulation of the Department of Corrections. The search was an activity of an inherently governmental nature, undertaken in order to secure the prison. Under the framework I have developed the officials were therefore acting under color of state law.[5]

### III

Although Judge Cummings for the *en banc* majority discussed the issue only in a footnote, the panel in this case held that the existence of an adequate state remedy—an action in the Illinois Court of Claims—avoided any due process violation that may have otherwise occurred. Because of the potential importance of such a holding, I feel that it is necessary to register my disagreement with the panel's conclusions.

Mr. Justice (then Judge) Stevens' statement in the panel opinion was that there is "[a]n important difference between a challenge to an established state procedure as lacking in due process and a property damage claim arising out of the misconduct of state officers." I agree, and the cases cited in the opinion support the conclusion that in some situations where an adequate state remedy is sufficient to retrieve or replace property alleged to have been negligently or wrongfully taken by state action, a plaintiff may not be able to state a meaningful claim as to the denial of procedural due process under the Fourteenth Amendment.

---

4. As to the medical care afforded inmates, *compare Startz v. Cullen,* 468 F.2d 560, 561 (2d Cir. 1972) (is the lack of care so shocking as to constitute a denial of due process or as to constitute cruel and unusual punishment forbidden by the Eighth Amendment), *with Page v. Sharpe,* 487 F.2d 567 (1st Cir. 1973) (mere negligence, in the absence of conduct which shocks the conscience, in giving or failing to supply medical treatment to prisoners, does not state a section 1983 violation), *and Bishop v. Stoneham,* 508 F.2d 1224 (2d Cir. 1974) (deliberate indifference of prison medical personnel states a section 1983 cause of action). These cases take an approach to the question of section 1983 jurisdiction which is not unrelated to those cases which apply a Fourteenth Amendment substantive due process analysis. *See Fitzke v. Shappell,* 468 F.2d 1072 (6th Cir. 1972), and *Thomas v. Pate,* 493 F.2d 151, 157–58 (7th Cir. 1973) (mere dissatisfaction of prisoner with adequacy of medical treatment, without more, insufficient to maintain section 1983 action). The small degree of practical differences in these doctrines is illustrated in the eclectic case of *Gamble v. Estelle,* 516 F.2d 937 (5th Cir. 1975).

5. Were the seizure of property to occur in the course of an arrest or a transfer of residency, the same analysis would apply, consistent with *Cruz v. Cardell,* 486 F.2d 550 (8th Cir. 1973), and *Hansen v. May,* 502 F.2d 728 (9th Cir. 1974). *See also Shannon v. Lester,* 519 F.2d 76 (6th Cir. 1975), where a substantive due process analysis was used to find a sheriff liable for refusing to take a plaintiff to a hospital subsequent to arresting him at the scene of an automobile accident, in part because the plaintiff was suspected of being drunk. *See also Boyd v. Brishke,* 466 F.2d 6, 10 (7th Cir. 1972). *Contra Howell v. Cataldi,* 464 F.2d 272, 279 (3d Cir. 1972), where it was held that an alleged assault by police officers in the course of an investigation would result in a civil rights violation only if there was "culpable negligence or intention."

The results in those cases, however, were grounded on the relationship between the importance and urgency of the state activity involved and procedural due process. There was a different factual and legal context to which the due process analysis was applied, and the presumption was that a legitimate state interest had been invoked in the taking. The procedural remedy (notice and hearing) then provided the citizen an opportunity to dispute the factual or legal presumptions made during the state's implementation of its legitimate interest. The nature of the state interest and the need for immediate action in order to implement it is evident from the subject matter involved in those cases. *North American Cold Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (seizure of food unfit for consumption); *Central Trust Co. v. Garvan,* 254 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403 (1921) (seizure of property under Trading with the Enemy Act); *Corn Exchange Bank v. Coler,* 280 U.S. 218, 50 S.Ct. 94, 74 L.Ed. 378 (1930) (seizure of assets of an absconding husband); *Phillips v. Commissioner,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931) (collection of a tax); *Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944) (setting of price regulations); *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947) (appointment of conservator of assets of savings and loan association); *Ewing v. Mytinger & Casselberry,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (seizure of misbranded articles in commerce). In such instances, the state may legitimately act first and provide procedural protection subsequent to the taking of the property.

Negligent conduct of state officials, by contrast, does not partake of a legitimate governmental interest. Rather, it represents a misuse of power.[6] A deprivation in such a case is a denial of the citizen's constitutional rights defined by the Fourteenth Amendment. The alleged misuse of power represents a completed act upon which liability is predicated. There is no extenuat-

ing state interest which would allow the requirements of procedural due process to be satisfied by a subsequent hearing. A retrospective remedy, therefore, cannot be conceptualized as resolving this type of deprivation of constitutional rights. "[N]o later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. 'This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone.'" *Fuentes v. Shevin,* 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972) (citation omitted.) When the deprivation is wrongful, arbitrary, or serves no legitimate governmental interest a state reparation remedy must be viewed as an alternative process to actions brought under section 1983. *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), made this clear: "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." To hold that only if the state fails to provide an adequate remedy could section 1983 be utilized would be to emasculate civil rights jurisdiction over all property deprivations which can properly be the subject of state tort suits.

I note, in addition, that it would be logically inconsistent to reach the conclusion that cases involving negligence were excluded from section 1983 due to the state's provision for a tort suit while allowing cases involving intentional takings to be heard in federal court. In both instances, there has been a loss of property. If a subsequent state suit in one case is sufficient to provide "due process of law," it should be adequate in the other. The presence of "intent" should not alter the treatment afforded a citizen's claim to access to the federal courts for relief from the misuse of state authority. The degree of culpabili-

6. The term "misuse of power" connotes a large spectrum of conduct. It is not confined to conduct which is malevolent or deliberate. Its meaning includes any deviation from the normal or expected furtherance of governmental functions.

**578**

ty involved may be an appropriate consideration for purposes of setting a damage award or establishing a substantive cause of action, but it cannot act as a selection procedure for purposes of section 1983 jurisdiction.

The *en banc* majority has indicated in footnote 7 that it agrees with this conclusion. I have suggested this analysis because I believe the issue deserves fuller treatment than the majority gave it.

I would reverse the district court's grant of summary judgment on the plaintiff's Fourteenth Amendment claim.